## Kaufman & Co. *versus* The Cooper Iron Mining Company.

1. An averment in an affidavit of defence that the plaintiffs, by their authorized agent, sold the iron ore, for the price of which the suit was brought, and expressly warranted that it should be well roasted, free from sulphur, and in all respects equal in quality to a certain lot of ore previously sold by plaintiff to defendant, is a sufficient averment of warranty; and, when followed by averments of breach of warranty, is sufficient to prevent judgment for want of a sufficient affidavit of defence.

2. A claim of set-off in an affidavit of defence need not be of a certain liquidated amount, where the facts out of which the alleged set-off

[Kaufman *v.* Cooper Iron Co.]

arises, as stated in the affidavit, are such that an approximate amount only could be stated, which was done.

3. The requisites of an affidavit of defence as to certainty, considered.

March 5, 1884.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:* Of January Term, 1884, No. 257.

Assumpsit, by the Cooper Iron Mining Company, against William M. Kaufman and others, doing business as William M. Kaufman & Co.  The plaintiff filed a narr. in the common counts, and a copy of book entries, claiming the sum of $1,338.75, for 382.10 tons of iron ore, sold and delivered, at $3.50 per ton, with interest.

The defendants filed the following affidavit and supplemental affidavit of defence, in pursuance of the provisions of the Act of February 6, 1868, P. L., 124:

The plaintiffs' claim is based upon a sale of iron ore made by them to the defendants, through Joseph P. Reed & Co., their agents.  At the time of the said sale, the said agents had sold to the said defendants fifty tons of iron ore on behalf of their said principal, which fifty tons consisted of ore well and nicely roasted, and prepared for smelting, with the sulphur extracted, and thereupon the said defendants purchased from the said plaintiffs, through their agents aforesaid, three hundred tons more, parcel of the ore sued for, and the purchase of the said ore was made upon the express agreement on the part of the said agents, and the said agents so declared that all the ore so purchased should be well roasted and should be free from sulphur, and in all respects be equal in quality with the previous fifty tons, and should be fit for the manufacture of foundry iron, and the said purchase was made upon the faith and credit of the said promise and agreement.  Thereupon the plaintiffs shipped the said ore to the defendants, who found it poor in quality, entirely unlike the previous fifty tons, very imperfectly roasted and full of sulphur, and entirely unfit for the manufacture of foundry iron.  The said iron ore was not and is not worth more than one dollar and seventy-five cents per ton.  Through the violation of the said contract by the plaintiff and the shipment of an inferior quality of ore as aforesaid, the defendants incurred damages in an amount exceeding the plaintiffs' claim for the price of the said ore. Defendants were at the time of the said contract manufacturing foundry iron, and had the entire product of their furnace sold for upwards of a month in advance to foundry men and for foundry purposes.  The defendants did not discover the inferior quality of the ore until, by reason thereof, the

furnace began to work badly, and the product of the furnace was, in consequence of the inferior quality of the said ore, unfit for the purposes for which it had been sold, and was in many instances rejected by the persons who had contracted with the defendants to purchase it. The number of tons of iron, spoiled by the inferior quality of the said ore was about three hundred, and the difference between the value of the iron, which defendants could and would have made from ore of the quality stipulated for, and the iron actually made of the said ore, was three dollars per ton. That the said defendants have yet about one hundred tons of the said iron ore on hand, and are unable to use the same in its present condition.

All of which is true, etc.

SUPPLEMENTAL AFFIDAVIT.—The plaintiffs' claim, as stated in the previous affidavit, is based upon a sale of iron ore made by them to the defendants through Joseph P. Reed & Co., their agents. At the time of the said sale the said agents had sold to the said defendants fifty tons of iron ore on behalf of their said principal, which fifty tons consisted of ore well and nicely roasted, and prepared for smelting, with the sulphur extracted, and thereupon the said defendants purchased from the said plaintiff, through its agents aforesaid, three hundred tons more, parcel of the ore sued for, and the purchase of the said ore was made upon the express agreement on the part of the said agents, and the said agents so declared and expressly warranted that all the ore so purchased should be well roasted, should be free from sulphur, and in all respects be equal in quality to the previous fifty tons, and should be fit for the manufacture of foundry iron, and the said purchase was made on the faith and credit of the said promises, agreement and warranty. The said Joseph P. Reed & Co. were at and before the time of the purchase of the said three hundred tons of ore, the general agents of the plaintiffs for the sale of iron ore, with full authority to warrant the quality of the ore sold by them on account of their said principal, and it was at the time of said sale and is yet usual in the market to warrant the quality of iron ore, upon a sale thereof, and the plaintiffs after the making of the said warranty, by their agents aforesaid, had knowledge of the same having been made and assented thereto. Thereupon the plaintiffs, pursuant to the said purchase, shipped the ore in question to the defendants, who found it poor in quality, entirely unlike the previous fifty tons, very imperfectly roasted, and full of sulphur, and entirely unfit for the manufacture of foundry iron. The said iron ore was not and is not worth more than one dollar and seventy-five cents per ton, and the defendants claim to set off against the plaintiffs' claim the difference between the actual value of the

said ore, viz., one dollar and seventy-five cents per ton, and the value it would have possessed if it had conformed to the warranty, viz., three dollars and fifty cents per ton, making altogether upon the three hundred tons the sum of four hundred and fifty dollars. The said ore was shipped in daily shipments extending over the period of about a month, and was used in a mixture of different ores for the purpose of manufacturing an iron suitable for foundry purposes. The ore was dumped in a separate place in the stock house, and the poorness of its quality and its unfitness as aforesaid were not discovered by the defendants until a number of shipments had been received. The defendants immediately, to wit, on January 9, 1883, notified the plaintiffs by letter of the poorness of the quality of ore, and that unless it could be sent thoroughly roasted it would be of no benefit to the defendants, which letter was duly received by the plaintiffs. Notwithstanding the said notice the said plaintiffs continued sending a poor quality of ore as aforesaid and shipped an excess of about thirty-two tons above the amount of three hundred tons stipulated for, and the excess was equally poor with the rest, and like the rest worth but one dollar and seventy-five cents per ton. The defendants also claim to set off their additional damage as set forth in their original affidavit of defence.

All of which is true, etc.

Plaintiff took a rule to show cause why judgment should not be entered for want of a sufficient affidavit and supplemental affidavit of defence, which rule the court (SASSAMAN, J.), made absolute, whereupon the defendants took this writ of error, assigning for error the said judgment.

*Cyrus G. Derr,* for the plaintiffs in error.

*G. A. Endlich,* for the defendant in error.

Mr. Justice CLARK delivered the opinion of the court, May 26, 1884.

In determining the question raised upon this record we must assume the truth of the facts stated in the affidavits of defence filed, original and supplemental; if these facts disclose a valid defence to the whole or even a part of the plaintiffs' claim, the judgment must be reversed. The plaintiffs' bill of particulars filed exhibit their claim to be for $382\frac{1}{10}$ tons of iron ore, delivered in the month of January, 1883, at \$3.50 per ton, \$1,338.75.

The supplementary affidavit states that "the plaintiffs' claim is based upon a sale of iron ore, made by them to the defendants, through Joseph P. Reed & Co., their agents;" that

[Kaufman v. Cooper Iron Co.]

" the said Joseph P. Reed & Co. were, at and before the time of the purchase of the said three hundred tons of ore, the general agents of the plaintiffs, for the sale of iron ore, with full authority to warrant the quality of the ore sold by them, on account of their said principal." Having thus defined the character and scope of the agency through which the purchase was effected, the affidavit avers that the plaintiffs had previously sold to the defendants fifty tons of ore, " well and nicely roasted, and prepared for smelting with the sulphur extracted," and that the defendants thereupon purchased three hundred tons more ; that the last mentioned purchase was made "upon the express agreement, on the part of the said agents, and the said agents so declared and expressly warranted, that all the ore so purchased should be well roasted, should be free from sulphur, and in all respects be equal in quality to the previous fifty tons, and should be fit for the manufacture of foundry iron ; and the said purchase was made on the faith and credit of the said promises, agreement and warranty."

The defendants in error contend that there is no allegation of warranty here set forth, such as will answer the requirements of an adequate affidavit of defence. It is certainly true when the defence set up involves an issue of fact, the affidavit must state facts, all the facts necessary to constitute a substantial defence. General averments of matters which in themselves are legal conclusions, from facts not stated, are insufficient, as, for example, payment, fraud, or undue influence, these involve mixed questions of law and fact. It should appear how payment was made, of what the fraud or undue influence consisted, etc. So the mere averment of a warranty, without more, is bad ; the affidavit should disclose whether it was express or implied, set forth its terms and state when, by whom and by what authority it was made, but it is not required that the words of the alleged warranty should be stated at length.

The affidavits filed in this case set forth, we think, a valid defence against the plaintiffs' claim, at least pro tanto ; the facts stated in each are different, and on that account should be carefully examined ; but they do not contain alternative allegations upon the subject matter of the defence. They clearly set forth that an express warranty was made at the time of the purchase, by the duly authorized general agents of the plaintiffs, to the effect that all the ore so purchased should be well roasted, free from sulphur, in all respects equal in quality to the previous fifty tons, and fit for the manufacture of foundry iron, and that the purchase was made upon the faith of the warranty. The word " warranty " is not here introduced, or used in any merely general or complex sense, involving an inference or conclusion of law, but in the expres-

sion of a fact, the particulars of which are specified. It does not appear that the warranty was by deed or writing, but what is not stated in an affidavit of defence must be taken not to exist: Lord *v.* Ocean Bank, 20 Pa. St., 384; if it were essential that such a contract must be manifested by writing, the omission would be fatal, as the existence of a writing could not be presumed. The damages resulting from the breach are, it is true, assessed according to an alternate measure, and the defendant claims to recoup or recover, by way of set-off, according to one, or other or both of these, as the law may entitle him. What may be the proper measure of damages, we will not now consider; the rule entered was for judgment on the plaintiffs' claim, not for any part of it. It is sufficient for the purpose of this case, as now presented, if a valid defence is asserted for part. We might perhaps, upon the mere ex parte allegations of an affidavit, declare the rule which should govern in the ascertainment of damages, but when the facts are fully shown on both sides, the rule thus declared might prove inapplicable, and be productive only of mischief at the trial. We can only determine that question when it comes properly before us; it is not now essential to the proper adjudication of the matters involved in this record.

The defendants' liquidation is only approximate; under the circumstances this was sufficient; in the very nature of the case only an approximation could be made. They claim "about" four hundred and fifty dollars for the difference between the real value of the ore and its value as warranted, and also "about" nine hundred dollars additional for the difference between the value of the iron, made from this inferior ore, and such iron as could and would have been made from the ore stipulated for and warranted. Which of these modes of assessment is the correct one will be determined under the proofs, but it seems reasonably clear that they cannot be entitled to the results of both. An affidavit of defence is not to be framed with the technical accuracy of formal pleadings, nor subjected to the severe scrutiny which a fine, critical skill may exercise, but it must exhibit all the elements of a substantial defence; nothing should be left to inference except that which must necessarily be inferred: Twitchell *v.* McMurtrie, 27 P. F. S., 383; Thompson *v.* Clark, 6 P. F. S., 33. The defendant should state the facts with reasonable precision; he need not state the manner in which those facts will be proved, or the evidence by which they will be established: Bronson *v.* Silverman, 27 P. F. S., 94; Reznor *v.* Supplee, 31 P. F. S., 180; Moeck *v.* Littell, 1 Norris, 354.

We are of opinion that a sufficient defence was asserted in

[Rowe v. Ream.]

the affidavits to send the case to a jury. For these reasons, therefore, the

Judgment is reversed, and a procedendo awarded.