# Levine et al., Appellants, v. Pittsburgh State Bank et al.

*Practice, C. P. — Statement of claim — Averments — Fraud — Waiver.*

1. Where fraud is set up in a statement of claim as a ground for relief, the facts which constitute it must be averred.

2. General averments of matters which in themselves are legal conclusions, from facts not stated, are insufficient.

3. Acts done in furtherance of a contract after knowledge of an alleged fraud, may operate as a waiver of the fraud by the party alleged to have been defrauded.

*Practice, C. P.—Statement of claim—Amendment—Questions of law—Appeals—Discretion of court—Abuse.*

4. Where plaintiff has once amended his statement of claim, the question of opening the judgment and permitting further amendments is for the discretion of the trial court.

5. When review of the exercise of such discretion is sought on appeal, a plain abuse of discretion must appear to warrant reversal.

Argued October 13, 1924. Appeals, Nos. 110 and 111, Oct. T., 1924, by plaintiffs, from judgments of C. P. Allegheny Co., Oct. T., 1922, Nos. 2203 and 2204, on questions of law raised by affidavit of defense, in case of Samuel J. Levine and Nathan Levine v. Jacob Roth and Samuel J. Levine and Nathan Levine v. Pittsburgh State Bank.

Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for alleged malfeasance of agents.
Question of law raised by affidavit of defense. Before DOUGLASS, J.

The opinion of the Supreme Court states the facts.
Judgments for defendants. Plaintiffs appealed.

*Errors assigned* were, inter alia, judgments, quoting them.

*A. O. Fording,* with him *A. L. Silverman,* for appellants.

*John C. Bane,* with him *Frank R. S. Kaplan,* for appellee, was not heard.

OPINION BY MR. JUSTICE WALLING, November 24, 1924:
The plaintiffs, Samuel J. Levine and Nathan Levine, brought an action of trespass against the Pittsburgh State Bank and also a similar action against Jacob Roth, the bank's president. Both grow out of the same transactions, involve the same questions and will be disposed of together. For convenience we will discuss the case against the bank. The defendant challenged the sufficiency of plaintiffs' statement by an affidavit of defense raising law questions only; whereupon the court entered judgment for the defendant and plaintiffs have appealed. The judgment was properly entered.

In the spring of 1920, plaintiffs, who resided in Pittsburgh, were negotiating with certain importers for the purchase of large quantities of white Java sugar; to do so it was necessary for them to establish credits with banks in New York, which, at their instance, the defendant did. This enabled plaintiffs, on May 3, 1920, to conclude negotiations with the importers for the purchase of three hundred and twenty-eight tons of sugar; and four days later, to wit, on May 7th, for the additional

purchase of two hundred and fifty tons. On or about the latter date, plaintiffs paid defendant $15,000, to protect it for the credits so established, and on August 12, 1920, the additional sum of $30,000, for the same purpose. Meantime, and prior to May 23d, plaintiffs had contracted to sell all of the sugar, except ninety-five tons, at a large profit, to customers at Pittsburgh, for which the latter were to establish credits at the defendant bank. In the early summer of that year (1920), however, the market price of sugar began an abrupt drop and these customers refused to establish the credits or to accept and pay for the sugar as they had agreed.

The sugar market continued to drop and, on October 12, 1920, an agreement was made between plaintiffs on the one part, and the bank and S. E. Bramer, one of its directors, on the other part, by which the former assigned to Bramer a two-thirds interest in the two contracts of purchase and their entire interest in the contracts of sale and invested him with full power to manage and control the entire transactions, as he deemed best, including the right to bring suits, make compromises, etc. As part of the agreement Bramer and the defendant undertook to protect the plaintiffs from any liability beyond the $45,000. That agreement is still in force and operation, and plaintiffs have never been called upon to pay anything more; but in 1922 they brought this suit in trespass to recover, inter alia, damages because of the payment of the $45,000.

On May 26, 1920, plaintiffs gave defendant a written agreement, which, although not set out in the pleadings, seems to have been an undertaking by them to protect the bank for the credits it had established on their behalf, and, pursuant thereto, plaintiffs paid the additional $30,000 above mentioned. They aver that the contract of May 26th was executed with the understanding it was not to be enforced but was a mere formal matter to show the bank examiner. That would be an illegal purpose, and plaintiffs, having paid the money, would have no

standing in any form of action to recover it back (see Reynolds v. Boland, 202 Pa. 642; Kunkle's App., 107 Pa. 368); but this does not cover the whole case, nor is it necessary to base our decision upon it.

Plaintiffs' statement avers, in effect, that while their vendees of the sugar in question were able and willing to establish the credits above referred to with the defendant, it fraudulently neglected to secure the same, whereby plaintiffs lost the profits on such sales, amounting to $27,318.14. But no facts are averred which made it the duty of the defendant to obtain such credits and plaintiffs frankly admit, both in their oral and printed arguments, that it was their own duty to obtain the credits. Hence, this feature drops out of the case.

Plaintiffs' main contention, however, is that defendant prematurely established the credits with the New York banks, that by the oral agreement between the parties hereto such credits were not to be established until after plaintiffs' vendees had established the credits with defendant. Here plaintiffs' statement is inconsistent, for it avers that, relying upon defendant's establishment of the credits in New York, plaintiffs closed the negotiations and contracted for the purchase of the two consignments of sugar. But the statement also avers that plaintiffs had refrained from closing and signing the contracts, until their vendees of the same sugar should establish the credits with defendant. In substance, that plaintiffs were to sell and be paid for the sugar before they had bought it, or even made a binding contract for its purchase, so that, but for the establishment of the credits in New York, they would have incurred no liability. Assuming the accuracy of the averments last above made and that defendant's act completed plaintiffs' purchase of the sugar, it was a favorable purchase, for plaintiffs' statement avers that: "Whereas on May 26, 1920, the market price of sugar had so risen as that sugar was then being sold to large consumers at three or four cents per pound above the prices contracted for by

the plaintiffs in purchasing." Thus, at any time for at least three weeks after the purchases, they could have sold the sugar to large consumers at a handsome profit. In fact, they did sell at a profit exceeding $27,000, and defendant is not liable because the customers selected by plaintiffs made default. Of course, if plaintiffs were otherwise legally liable on their contracts with the importers, that liability was not increased by the credits which defendant established.

Moreover, plaintiffs engaged the defendant to establish the credits in New York; if done prematurely it was waived by the conduct of the former. On May 7, 1920, before making any contract for the sale of the sugar, plaintiffs gave defendant the $15,000 and, on August 12th, the $30,000, both voluntarily paid on account of the establishment of the credits in New York, although they had received nothing on their contracts for sale of the sugar. Furthermore, by the October contract, plaintiffs made a settlement of the sugar transactions with defendant, turned over the contracts and received the agreement of indemnity, as above stated. Plaintiffs, therefore, knowingly ratified the act of the defendant in establishing the credits and cannot now complain that it was done prematurely, or recover the voluntary payments made on account thereof: see Browning v. Rodman, 268 Pa. 575, 20 Cyc. 92. Whether the agreement of October 12, 1920, amounted to a technical accord and satisfaction we need not decide. Plaintiffs abandon their claim for loss of profits and cannot recover the $45,000 for reasons above stated; hence, as the contract of October 12, 1920, protects them from further loss, there is nothing left to support a claim for damages. True, plaintiffs' statement frequently uses such terms as "fraud," "falsehood," "duress," "conspiracy," etc., in referring to the conduct of the defendant and its president, but sets forth no facts to justify the same. The mere averment of a conclusion is without avail unless supported by a statement of facts, for "General averments

of matters which in themselves are legal conclusions, from facts not stated, are insufficient, as, for example, payment, fraud, or undue influence, these involve mixed questions of law and fact. It should appear how payment was made, of what the fraud or undue influence consisted," etc.: Kaufman v. Cooper Iron Co., 105 Pa. 537, 541; and see Gross v. Exeter Machine Works, 277 Pa. 363; Guaranty M. Co. v. Hudford P. S. Co., 264 Pa. 557; Reilly v. White, 234 Pa. 115; Wolf v. R. R. Co., 195 Pa. 91, 96; Superior National Bank v. Stadelman, 153 Pa. 634; Garis v. Fish, 133 Pa. 555, 559; Insurance Co. v. Hancock, 9 Pa. Superior Ct. 480; McGowan v. Boney, 74 Pa. Superior Ct. 123. Where fraud is set up as a ground for relief the facts which constitute it must be averred: Little v. Thropp, 245 Pa. 539; and see McCloskey v. Snowden, 212 Pa. 249; Felleman v. Cassler, 198 Pa. 407; Sterling v. The Mercantile Mutual Ins. Co., 32 Pa. 75.

Without going into all the details, we have outlined the main facts as set forth in plaintiffs' statement. Before taking this appeal, however, plaintiffs asked to have the judgment opened and for leave to amend the statement of claim; this was refused and one reason given therefor was that if amended as proposed the statement would still be ineffective. In this we concur. The proposed amendments would bring out more clearly plaintiffs' contention, not that defendant failed to secure the establishment of credits from plaintiffs' vendees, but that it failed to see that such credits were established before it established the credits in New York. The effect of this averment we have already considered, and in passing upon the case have given no weight to the defect of the present statement in that regard, nor to the contention that the action should have been assumpsit rather than trespass; for we are clearly of the opinion that, so far as concerns the matters here complained of, plaintiffs have no valid claim against defendant or its president, in any form of action in the manner in which it is or is

sought to be stated.  Furthermore, plaintiffs had once amended their statement and the question of opening the judgment and permitting further amendments thereto was for the discretion of the trial court.  In the case of Levine et al. v. Roth et al., 276 Pa. 244, between the same parties and involving the same transactions, we say: "The section of the Practice Act [of 1915], above referred to, provides that, when questions of law are raised by affidavit of defense, they may be 'set down for hearing and disposed of by the court,' and that, inter alia, 'the court may enter judgment for defendant, or make such other order as may be just.'  After this, there is a provision that, if the court decides the questions of law against defendant, 'he may file a supplemental affidavit of defense,' but nothing is said as to allowing amendments to plaintiff's statement of claim, when such questions of law are decided against him; that is left within the discretion of the court below, and, when review of the exercise of this discretion is sought on appeal, a plain abuse must appear to warrant reversal."

In each appeal the judgment is affirmed.