M. A. Long Co. *v.* Keystone Portland Cement Co., Appellant.

Argued December 2, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Asher Seip,* with him *Dudley A. Giberson* and *Walter Jones,* for appellant.—The facts averred show a con-

tract on its face unconscionable and unenforceable at the price stated: Hume v. U. S., 132 U. S. 406; Whiteside v. U. S., 93 U. S. 247; Bassick v. Explosives Co., 246 Fed. 974; Bedford R. R. v. Bowser, 48 Pa. 29; Blystone v. Blystone, 51 Pa. 373.

The facts averred show collusion between the claimant and on officer of defendant company to defraud defendant.

The affidavit of defense sufficiently alleges the lack of authority of defendant's officers to make the contract: Gonder v. R. R., 171 Pa. 492; Bird C. & I. Co. v. Humes, 157 Pa. 278; Tenth Nat. Bank of Phila. v. Construction Co., 242 Pa. 269; Porter v. Healy, 244 Pa. 427; Glenn v. Brewing Co., 259 Pa. 510.

*T. McK. Chidsey,* of *Chidsey, Maxwell & Frack,* for appellee.—Affidavits of defense in mechanic's lien claims must be specific and the same rules are applicable in this respect as are applied to affidavits of defense in assumpsit and other actions: Catanach v. Cassidy, 159 Pa. 474; Warren v. Johnston, 33 Pa. Superior Ct. 617; Little v. Thropp, 245 Pa. 539; Levine v. Bank, 281 Pa. 477; Alexander v. Hunsberger, 86 Pa. Superior Ct. 386.

Even if defendant were not estopped by its failure to file a replication or to take depositions, its want of due diligence fully justifies the refusal to open the judgment.

The present case falls within the rule that a court will not open a judgment for intrinsic as distinguished from extrinsic fraud after the expiration of the term at which the judgment was entered: McEvoy v. Cab Co., 267 Pa. 527; Powell v. Doyle, 77 Pa. Superior Ct. 520; Wickel v. Mertz, 49 Pa. Superior Ct. 472.

OPINION BY MR. JUSTICE SIMPSON, January 6, 1931:

Plaintiff filed a mechanic's lien against defendant's properties, and caused a writ of scire facias to be issued upon it. Defendant's affidavit of defense was held in-

sufficient, and judgment entered for $155,098.37. From it the present appeal was taken.

Before the case was reached for argument in this court, appellant presented to us a petition praying that the record be returned to the lower court, in order that an application might be made therein "to open the judgment and for leave to file a supplemental or amended affidavit of defense." A rule to show cause was granted, plaintiff filed an answer, and we made the rule absolute.

On the return of the record to the lower court, defendant presented a petition of the character referred to, and attached thereto a copy of the proposed supplemental affidavit of defense. A rule to show cause was granted, plaintiff filed an answer, and the petition was dismissed because it had not been presented within the term of the court below at which the judgment for want of a sufficient affidavit of defense had been entered. Surely it would have been reasonable to infer we knew that particular term had expired, when we remitted the record, since, at that time, more than three months had passed after the entry of the judgment; or that, if we were in doubt on the subject, we could readily have inquired of court or counsel, and not taken the roundabout method of remitting the record, etc., in order to ascertain this simple fact. Perhaps, also, it would not have been difficult to conclude that we believed the same-term rule had no application to the case, as was indeed the fact, since we had recently so decided. In Kantor v. Herd, 276 Pa. 519, 524, which, like the present, was a mechanic's lien case in which it was sought to open a judgment by default entered at a prior term, we said, "we see no reason,—in the case of a statutory rather than a common law proceeding, if due diligence appears, —why appropriate action should not be taken though the term had expired." Appellee seeks to distinguish that case from the present one by the fact that the affidavit of defense there filed was in effect only an affidavit raising preliminary questions of law. There is

such a distinction, but it was not the basis of the decision, which is specifically stated to be because that was "a statutory rather than a common law proceeding," just as it is here.

To clarify the situation for the future, we now definitely say that in statutory proceedings the rule should not be applied, in the absence of a legislative requirement, but the question should always be, as it was stated to be in that case, whether the defendant exercised "due diligence" in seeking relief. The rule itself is a survival of a time when the judgment roll was finally closed at the end of the term, and all things appertaining to it were supposed to be closed with it; hence there appeared then to be some excuse for the existence of the rule. Now, however, no such reason exists. In several of our recent cases it seemed clear that the rule was invoked by a litigant who had purposely delayed taking summary judgment until the last day of the term; and it has appeared to the writer, and to at least some of his colleagues, that the rule could be wisely supplanted by one fixing a definite period, after the entry of the judgment, within which time a rule to open it must be sought, if at all; or by one applying to each case the principles involved when the doctrine of laches is invoked. For the reason already stated, however, it is not necessary to consider the matter further at the present time.

Returning to the questions now before us, we are admonished, by the constitutional requirement that "justice shall be administered without......delay," not to send the case back for an opinion on the merits, as would ordinarily be done, but to dispose of it finally, without the aid we were entitled to have from the judges of the court below. Since appellant claims not only that the judgment should have been opened when the record was returned, but also that there was error in entering it in the first instance, we shall consider these questions in their chronological order.

In the original affidavit, defendant does not deny that plaintiff duly performed the work contracted for, and there is no challenge regarding the manner in which it was done, nor as to the character, quality or quantity of the materials used. Defendant does not question the fact that, for so much of the work as gives rise to the present controversy, the contract simply provided that plaintiff was to be paid therefor at "the unit prices charged by [it] in the construction of the original plant [of defendant], of which [plaintiff] was also the principal contractor," and that it was so charged. Apparently its contention was, and this was its only objection to the claim, that in the building of the original plant, when bids were submitted by plaintiff for the concrete form construction, they were specified to be at 25c per square foot, and that figure was inserted in a preliminary agreement covering part of the work, which agreement stated, however, that it was to be followed by a formal agreement including all of it; that in the latter, when it was executed, the price was stated to be 50c per square foot, and that, when the work was done and paid for, it was at the latter figure. It was urged, however, that the change was wrongfully made, a fact which defendant said was unknown to it at the time the additional plant, the subject of this lien, was contracted for, and hence the provision in the present contract that "the unit prices charged by [plaintiff] in the construction of the original plant" should apply to the new work, would be legally construed to mean only the unit prices as they should have been, and not as they actually were charged in that construction.

The lower court correctly determined that if, in the original affidavit of defense, fraud was intended to be charged, the language used was inadequate for the purpose, under the principle which requires certainty and clearness in that kind of an averment. It was expressly admitted by defendant that, for several years, payments had been regularly made under the original contract,

at the rate of 50c per square foot for concrete form construction, exactly as specified therein; but it was alleged they were made before the overcharge was discovered by defendant. It is averred that the original bid was for 25c per square foot, but that Franks, who was defendant's vice-president and general manager, afterwards "went to the office of the claimant in the City of Baltimore, Maryland, for the purpose of going further into the matter of awarding the contract for said construction work," and that, when he returned, "the bid of the claimant had been raised......to 50c per square foot for form work"; that "the said increase......was made without any reason, justification or excuse and created a disadvantageous contract upon the part of the defendant company"; that the change "was unauthorized, illegal and prejudicial to the rights of the defendant company and its stockholders and was the means by which a fraud was perpetrated upon" them; and that the payment and acceptance of the excess price was also a fraud. The word "fraud" is repeatedly used in the affidavit, but never with a statement of the facts showing how the increased price came to be inserted in the contract, or what was done by defendant's officers in executing the contract with the increased price in it, so that the court could decide, as a matter of law, whether or not the change was rightfully made. It is repeatedly suggested that the allegations that the change was "unauthorized, illegal and prejudicial to the defendant company and its stockholders" and was made "without any reason, justification or excuse," were statements of fact, but this is not so unless those alleged facts were simply the belief of defendant on the point. If the actual facts had been given, the court could have determined whether or not the change was "unauthorized, illegal and prejudicial" and "without any reason, justification or excuse"; that defendant believed this to be so was a matter of no moment whatever. What it was, not what defendant believed it to be, was the important matter, and averments

on this latter point were wholly wanting. We have many times said that vituperative epithets without a clear statement of the facts supposed to justify them, should not be indulged in (Wolf v. P. R. R. Co., 195 Pa. 91, 96-7; McCloskey v. Snowden, 212 Pa. 249; Levine v. Pittsburgh State Bank, 281 Pa. 477), and need only repeat that, as usual, they avail nothing here. We are clear, therefore, that the original affidavit of defense was insufficient to prevent summary judgment.

Should the court below have opened the judgment? When we allowed the record to be returned to enable such an application to be made, we were impressed with the belief that defendant might have an equitable defense which it had failed to set forth adequately, and we intended to and did give it an opportunity to show why, in accordance with the principles of equity practice, it should have another opportunity to present what it contended were the actual facts, although it had not asked the court below for leave to file a supplemental affidavit of defense even when, at the argument in that tribunal, its attention was called to the alleged defects in its original affidavit. Our order was not intended to and did not place defendant, however, so far as the application was concerned, in a different situation from that of any other litigant who seeks to have a summary judgment opened, and it is but fair to say its counsel make no such claim.

As already stated, in due course defendant presented its petition to the court below, a rule to show cause was granted, plaintiff filed an answer to which were attached a number of supporting affidavits, and, after a hearing, the rule was discharged. When the answer was filed, defendant had the choice of taking depositions, limited, of course, to the issues made by the pleadings (Fisher v. King, 153 Pa. 3; Bauer v. Hill, 267 Pa. 559, 563), and then having the application heard on petition, answer and depositions; or of having it heard on petition and answer alone, in which event the averments of the an-

swer, so far as they were responsive to those of the petition, would have to be taken as true: Kelly v. International Clay Products Co., 291 Pa. 383. This is the established practice, entirely aside from the applicable rule of the court below, which was quoted in appellee's brief. Defendant did not ask that it might be given an opportunity to take depositions, however, and hence reliance can be placed by it on the undisputed facts only.

The petition simply recited the prior proceedings in the case, and asserted that the averments of the attached supplemental affidavit of defense "are all and singular true and correct." The proposed supplemental affidavit (which in at least one important particular varies from the original affidavit and hence should be carefully scrutinized: Little v. Thropp, 245 Pa. 539) avers that prior to awarding a contract for the work done by plaintiff on the original plant, defendant secured bids from plaintiff and another contractor for the construction of the concrete forms, for doing which plaintiff's bid "in the first instance, including a proposal to erect the forms for the sum of 15c per square foot......was accepted and incorporated in a preliminary agreement;......that the formal agreement, provided for in the preliminary agreement" was later executed, and in it "was incorporated the unit price of 15c per square foot";......"that subsequent to the execution thereof," both said agreements were altered by plaintiff's president, Long, and defendant's vice-president, Franks, "without the knowledge or consent of the board of directors, or the officers of the defendant company executing said agreements" by changing the figures "15c" in each of them to "50c," without any consideration moving to the defendant; "that the said act [of alteration] was fraudulent, collusive, unauthorized, illegal and prejudicial to the rights of the defendant company and its stockholders, and was the means by which a fraud was perpetrated upon them; that plaintiff "accepted the illegal and unlawful increase in the contract price with full knowledge that

the same was an excessive price, higher than the price bid" by another party, and that it "would result in unlawfully taking from [defendant] the sum of money represented by said increase; [and] that the said forms, entering into......the original plant,......were illegally paid for at the increased unit price of 50c per square foot......in pursuance of the fraudulent, illegal and collusive agreement......perpetrated upon the defendant company by reason of the alteration and erasures in the said......contracts"; that the same illegal price was charged also in the second contract and was a continuing and carrying out of the fraud in the original contract; that said alterations were made "not alone for the purpose of defrauding [defendant] and its stockholders, but for the purpose of the illegal and fraudulent benefit of [Franks and Long] in that he [Franks] fraudulently received out of the payments made as aforesaid on the illegally increased rate......for the furnishing of said forms, [unstated] moneys and other things of value,......and, as a part of said illegal, fraudulent and collusive agreement entered into between them, ......$53,750 par value of the stock of the defendant company [was issued] in lieu of $50,000 par value of said stock as part payment of the contract price...... it having been agreed between them that the true nature of this transaction should not appear on the books and records of the defendant company, so that they [Long and Franks] might divide the same, or the value or proceeds thereof, between themselves, without paying therefor any value or money; and that the illegally increased price charged for the forms......used in both the original and additional plant of the defendant company was unknown to the officers and directors of said company, who were not a party to said fraud." The affidavit then goes on to state that, during the progress of the work on the two contracts, defendant paid plaintiff from time to time, because of said increased price, an excess of $86,-399.32, which defendant claims as a deduction from the

amount of plaintiff's lien; which related, however, to the second contract only. Attached to the affidavit is an elaborately itemized statement showing how that sum was made up.

It will be noticed that the gravamen of the proposed defense consists of the alleged fraudulent increase of the price for the construction of the concrete forms from 15c—instead of 25c as set forth in the original affidavit —to 50c per square foot, and the improper exacting of payments at the higher rate. As to this, the answer avers that plaintiff's bid was originally stated as 15c per square foot, and, at that figure, was mistakenly inserted in the preliminary agreement for the construction of the first building, because of a misunderstanding as to what had been said in a long-distance conversation over the telephone from Baltimore, where plaintiff's office was, to Allentown, defendant's place of business, where the bid was being made up; that the error was discovered two days later, long before the execution of the formal contract, was immediately called to the attention of defendant's officers and architect and was investigated by them; the price of 50c was found by them to be fair and just, the change was assented to by them, and the formal contract, altered accordingly, was executed some six weeks later, and payments were made in accordance therewith during the two years the first plant was being constructed. Such of defendant's officers as had anything to do with the obtaining of the bids, the execution of the preliminary contract, the change of the figures from 15c to 50c and the execution of the final contract, all gave supporting affidavits which were attached to plaintiff's answer and made a part of it.

At too great length to be quoted here, the answer specifically and categorically denies each and every averment of fraud and overreaching, and that Franks and Long received any consideration whatever for the change made. The suggestion that they received $53,750 par value of the capital stock of defendant, when entitled

only to $50,000, is explained as follows: By the contract, plaintiff was to take, in part payment of the work to be done, $50,000 par value of the stock; the stock was then being sold by those promoting the defendant company at the net price of $92.50 per share, and plaintiff suggested that it should not be required to pay more than that net price for the stock it was to receive in part payment. To this defendant assented, and the agreement was changed in writing accordingly. Before the stock was delivered, however, defendant induced others to offer plaintiff par for the stock it was to receive, plaintiff accepted the offer and was given but $50,000 of stock, which it sold for $50,000, and the previous agreement that it was to get $53,750 stock was abandoned and the stock never delivered.

The answer sets out at great length what appears to be undisputed, that defendant had in its possession, when it made the original affidavit of defense, and could then have utilized, all the data which it had when it prepared the proposed supplemental affidavit, and that all the other information it had, in the preparation of both affidavits, came from an officer of defendant who had nothing to do with the making or execution of either contract, or with the insertion or change of the original bid for the construction of the concrete forms in the preliminary or final contracts. It is not necessary to consider the effect of these facts, however, since, as already stated, the answer and supporting affidavits in great detail answer each and every allegation of wrongdoing made by defendant, and, if true, leave no doubt regarding plaintiff's legal and equitable right to recover the full amount of its claim. Since all of these averments of plaintiff must be taken as true, because of defendant's failure to take answering depositions, we can only decide that the refusal to open the judgment was right.

The judgment of the court below, and its order refusing to open that judgment, are each affirmed.