From George Hay Kain, York, Pa.

## Shallcross et al. v. Quaker City Building & Loan Association

*Saul, Ewing, Remick & Saul*, for plaintiffs.
*Edmonds, Obermayer & Rebmann*, for defendant.

SMITH, P. J., January 19, 1935.—Quaker City Home Building & Loan Association, the defendant in this matter, was the owner of a parcel of real estate situate at 2643 South Sixty-first Street in the City of Philadelphia. It secured a loan of $2,000 on this property from Philadelphia Company for Guaranteeing Mortgages, the plaintiff herein, upon its mortgage which was secured by the bond of the defendant association. The defendant immediately thereafter, on November 6, 1931, conveyed the said real estate, subject to the lien of this mortgage, to Morris Drob, who is the present title holder. By reason of defaults under the terms of the said mortgage, the plaintiff entered judgment on the said bond of the defendant, and an attachment sur judgment was issued attaching the bank account of the defendant in the sum of $1,340 in The Pennsylvania Company for Insurances on Lives and Granting Annuities. The defendant thereupon filed a petition praying for a stay of execution, which this court granted. The plaintiff then asked for a reargument upon the whole matter, which was later granted and heard. The defendant contends that its cash balance in bank should be held and distributed equally to creditors of the defendant by its liquidating trustees.

From a reading of the petition filed by the defendants praying that the stay of execution be issued, it would appear that the defendant association is not in the hands of a receiver, although it avers insolvency, and also that it is not dissolving under the control of the Department of Banking in accordance with

the Building & Loan Code of May 5, 1933, P. L. 457, although it avers that the liquidating trustees are liquidating under the supervision of the Department of Banking. The liquidating trustees therefore, since they attested to the signature to the bond upon which judgment has been taken, were elected by the association prior to the filing of the bond upon which judgment has been taken.

The plaintiff is a general creditor of the defendant building and loan association. It has the same status against the defendant as any general creditor whose claim had been reduced to a judgment would have against any other corporation. It is not restricted by the cases governing stay of execution where plaintiffs are withdrawing stockholders of a building and loan association. In those cases a preference is denied, since it would give such claimants an advantage over others who by reason of a present former copartnership relation have equal rights with them in the property of the association. The plaintiff as a judgment creditor has all the rights and remedies of any other judgment creditor, and there is nothing in the law to prevent an execution on that judgment unless some definite insolvency proceedings have been instituted against the defendant. The facts in the present case are controlled by the case of Malis v. Homer B. & L. Assn., 314 Pa. 321, wherein Mr. Justice Drew said (pp. 323-325) :

"The sole ground upon which defendant based its petition, and upon which the court below acted, was that to permit plaintiff to enforce payment of his claim in full before other general creditors were paid would constitute a preference, in violation of section 1112 of the Building and Loan Code of May 5, 1933, P. L. 457. This proposition cannot be sustained; the premise upon which it rests—that the distribution of assets in the voluntary liquidation of defendant is governed by the act—has no foundation in fact. The section upon which reliance is placed purports only to govern the order to be followed 'in the distribution, *pursuant to the provisions of this act*, of the assets of any association' in voluntary dissolution. This statute was not enacted until over five and a half months after defendant had voted to liquidate and had appointed its liquidating trustees, and did not go into effect (section 1301) until July 3, 1933, seven and one half months after defendant had taken this step. Certainly, therefore, it is not to be assumed that defendant's voluntary liquidation, begun so long before the Building and Loan Code was even in existence, was being undertaken 'pursuant to the provisions of this act.' And even were it possible that a liquidation so begun might be brought under the act, as to which we express no opinion, the record before us is entirely barren of either averment or proof that such was done. On the contrary, it is expressly averred in paragraph ten of plaintiff's answer that the liquidating trustees are operating outside the provisions of the act, and of course, as this proceeding arises upon petition and answer, without the taking of testimony, we must accept as true this pertinent fact as set forth in the answer: Kelly v. International Clay Products Co., 291 Pa. 383; M. A. Long Co. v. Keystone Portland Cement Co., 302 Pa. 308. Since defendant's liquidation is not under the act, the distribution of its assets is not governed by the section of the statute which specifies the order of distribution in liquidation 'pursuant to the provisions' of the act. It is, therefore, no defense to plaintiff's action to obtain the balance due upon his judgment to say that payment of his claim in full would constitute a preference forbidden by the act.

"Defendant insists, however, that the court below properly dissolved plaintiff's attachment and stayed execution thereon as an exercise of its equitable

jurisdiction to aid in the conservation of assets of a liquidating corporation for the benefit of all persons interested. When the situation is analyzed, it will be seen that there is no support for this contention. The court below made no such claim, and this power of a court of equity may be employed only where the liquidation thus protected is proceeding under the guidance of the court in accordance with some method prescribed by law, as, for instance, a receivership. Such was not the fact in the instant case. We know of no act of assembly enacted prior to 1933, nor has our attention been called to any, which provides a procedure for the voluntary liquidation of a building and loan association such as that defendant pursued. (Cf. Stone v. Schiller B. & L. Assn., 302 Pa. 544, 557.) When defendant's liquidation was begun, the course followed, however wise it may have been, was neither authorized nor forbidden by any statute. Before the passage of the Act of 1933, there was the Act of April 9, 1856, P. L. 293, but that statute provides only for the *dissolution* of corporations by empowering the courts of common pleas to grant them permission voluntarily to dissolve. There is nothing in the record which would indicate that defendant even followed the procedure there prescribed and presented a petition praying for permission to dissolve. Indeed, so far as appears from the petition and answer before us, the vote of defendant's shareholders pursuant to which the liquidating trustees were appointed was a mere business decision to carry on the enterprise no longer and to wind up the affairs of the association. And, that such a determination by the owners to cease doing business, without taking any steps prescribed by law for liquidation or dissolution, should operate to stay the hands of general creditors whose claims have been reduced to judgment, is a most novel and unsupportable proposition, the mere statement of which should be sufficient to demonstrate its unsoundness."

The other defense presented in argument by the building and loan association is that this case is controlled by the Deficiency Judgments Act of January 17, 1934, P. L. 243, and that the execution being contrary thereto, is illegal. The purpose of this act is to limit the amount of deficiency judgments whenever any real property is sold on any execution on a foreclosure of any mortgage, or on a judgment entered on any obligation secured by mortgage. It has to do with the sale of real property and makes no express provision regulating the attachment of personal property on a judgment entered on any obligation secured by a mortgage. It is evident that the act was meant to care for an emergency where the real estate market is frozen, or at least where there are few or no ready and willing purchasers who will make a bid of a fair value for the premises. The bond is a personal obligation of the obligor and while that obligation may be indirectly affected by the inability of the obligor to raise money on its realty, so long as it has personal property susceptible of attachment under a judgment execution it is liable to so meet that obligation. If the obligation is paid in full, the obligee is bound by the provisions of the Act of April 28, 1903, P. L. 327, which provides as follows:

". . . any owner of real estate who shall have given his bond or other obligation, secured by mortgage upon his real estate or any part thereof, and who shall afterwards have granted and conveyed the mortgaged premises to another, subject to the said mortgage, whether mentioned in the said conveyance or not, or leaving the said bond or other obligation and mortgage outstanding, shall have the right at any time after the maturity of the said bond or other obligation and mortgage, according to the terms and conditions thereof, to tender to the mortgagee or other owner or holder, at that time, of the said bond or other obligation and mortgage, and make payment of the mortgage debt

and interest to date of tender, including cost if any; and, if entitled in equity to be subrogated to the rights of the holder of the bond and mortgage against the vendees or their heirs or assigns, owners of the lands, thereupon to demand and require the said mortgagee, or other owner or holder thereof, to assign and transfer the said bond or other obligation and mortgage to him, the mortgagor, or his nominee, at the proper cost and expense of the said mortgagor; and if the said mortgagee, or other owner or holder of the said bond or other obligation and mortgage, shall fail or neglect to so assign and transfer the said bond or other obligation and mortgage, upon such tender of payment to him or them, together with any judgment or judgments entered thereon, the interest on the mortgage debt shall cease to run on the said indebtedness, as against the mortgagor, from the date of such tender, and he shall not be liable for any costs, charges, commissions or expense accruing after the date of such tender".

In the event that the said obligation is not satisfied and the obligee, having a deficiency judgment remaining, attempts to proceed against the real property, he is bound by the provisions of the said Act of January 17, 1934, P. L. 243.

The order staying execution should be vacated, and the said rule should be discharged.

### Decree

And now, to wit, January 19, 1935, the order staying execution is hereby vacated, and the said rule is discharged.