Burkholder et al., Appellants, *v.* Westmoreland
County Institution District et al.

Argued June 24, 1949. Before MAXEY, C. J., DREW,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Carroll Caruthers*, with him *Fred B. Trescher* and *Kunkle & Trescher*, for appellants.

*James Gregg*, with him *Vincent R. Smith* and *Vincent E. Williams*, for appellees.

*A. Frank Steiner*, *H. J. Woodward*, Deputy Attorney General, and *T. McKeen Chidsey*, Attorney General, for Commonwealth, intervening appellant.

OPINION BY MR. JUSTICE LINN, September 26, 1949:

The plaintiffs, who are the appellants, filed a taxpayers' class bill against defendants, named as "Westmoreland County Institution District, a Municipal Corporation, George R. Sweeney, J. Calvin Turner and Frank K. Cochran," and averred that Turner and Cochran were two of the county commissioners and, as such, were "the duly elected, qualified and acting majority of the Board of Commissioners of Westmoreland County, and by virtue of that office were a majority of the executive and administrative officers of the defendant, Westmoreland County Institution District." They averred that the Institution District, acting by Turner and Cochran, as one party, made an improvident contract with the defendant, Sweeney, the other party to the contract. They made a general averment that the contract was obtained by fraud and prayed that defendants be declared trustees ex maleficio; for injunctive relief; for a receiver and for an accounting. The defendants filed preliminary objections. The court sustained the objections filed by Sweeney; the record does not show

that the objections of the other defendants were disposed of at the time this appeal was taken. The court held that plaintiffs had not charged Sweeney with knowledge of or participation in the fraud or irregularity in obtaining the contract. The court thought the bill poorly drawn and gave unsolicited leave to amend; after plaintiffs declined to amend their bill, the court sustained Sweeney's objections and directed the dismissal of the bill as to him. Plaintiffs appeal from that decree.

The contract, which was made part of the bill, was dated June 7, 1948, and coal-leased to Sweeney for the purpose of "mining by the process known as strip mining, and removing the coal of the Pittsburgh vein or seam practical to be so removed in and underlying said tract of land." The tract of land comprised about 15 acres of what is known as the County Home Farm, which contained an area of about 810 acres. The contract provided that no coal capable of being mined by the deep mining method should be strip-mined. Sweeney agreed "to remove all of the topsoil from the area from which coal is to be removed in advance of the stripping operation, to store the same on a pile or piles separate from any other materials removed from said stripping area, to backfill the said area on which operations are conducted at the termination thereof and to replace over said backfill to the depth of the topsoil removed from the excavated area the topsoil removed therefrom and to do such backfilling in such manner that the reclaimed area shall conform to the same general slopes of the surface existing before the stripping operation started." He agreed to pay fifty cents per ton, railroad car weights, for each net ton of 2,000 pounds mined. The contract required him "to post a cash bond in the amount of Five Thousand and no/100 ($5,000.00) Dollars conditioned, for the performance by him of the covenants concerning removal and saving of topsoil and backfilling of all

stripping operations as hereinabove provided, said bond to be forfeited in case said party of the second part shall in any manner fail in his performance of the covenants aforesaid." It is not necessary now to detail other provisions.

The bill was filed September 23, 1948. We were informed at the oral argument that about ten of the fifteen acres had already been stripped and that Sweeney had paid to the Institution District the sum of $69,-826.86. Obviously the transaction was of considerable local importance.

Equity of course has jurisdiction; but the sufficiency of the bill may be challenged by preliminary objections: Equity Rule 48. After various general allegations concerning the making of the contract, plaintiffs aver in paragraph 14 that prior to June 7, 1948, Turner, Cochran and Sweeney "met and unlawfully conspired, confederated and agreed among themselves, and with each other, to give to the defendant, George R. Sweeney, the portion of the coal underlying said Westmoreland County Home farm which could not be mined and removed by the deep mine method and which could be mined and removed by the strip mine method." Paragraph 15 avers that "in furtherance of said combination, conspiracy and agreement, the defendants . . . in an effort to conceal said conspiracy, and to give some color of legality to said conspiracy, did the following acts and things: . . ." Paragraph 15 then continues with eleven sub-paragraphs lettered from (a) to (k), most of the allegations relating to conduct of Turner and Cochran. Sweeney is included only by averments that he signed the contract and proceeded under it. There is no averment of fact that would support a finding that he was cognizant of or participated in any fraudulent conduct by Turner and Cochran. Paragraph 16 refers to the contract, makes it part of the bill and alleges that averments in paragraph 15 and acts done

pursuant thereto by Turner, Cochran and Sweeney "were the result of said unlawful conspiracy . . ." It then avers, under lettered sub-paragraphs, certain conduct by Turner and Cochran with respect to authorizing the contract but does not include Sweeney. It is unnecessary for present purposes to refer particularly to other averments of the bill.

It is obvious that the bill is demurrable and that the objections by Sweeney were properly sustained after plaintiffs decided not to amend by averring facts from which his participation in the fraud, if any, could be inferred. It is elementary that if fraud is relied on for relief, the facts constituting the fraud must be averred. The principle is stated by the Superior Court in *Kittleberger & Evans v. Home Builders Co.*, 108 Pa. Superior Ct. 264, 267-8, 164 A. 821 (1933) : " 'Where fraud is set up as a ground for relief the facts which constitute it must be averred': Levine v. Pgh. State Bank, 281 Pa. 477, 482, 127 Atl. 68 [1924]. The mere averment of a conclusion is without avail unless supported by a statement of facts. General averments of matters which in themselves are legal conclusions or inferences from facts not stated are insufficient. This applies with particular force to charges of fraud and undue influence. It should appear of what the fraud or undue influence consists." In *Rice v. Braden,* 243 Pa. 141, 148-9, 89 A. 877 (1914), we said, ". . . fraud is never to be presumed but must be proven, and in averring it in a bill of complaint it is not sufficient to aver the legal conclusion that an act was fraudulently done or representation fraudulently made, but the facts which constitute the fraud must be clearly and explicitly set out, so that the court and not the pleader may judge whether the act or representation complained of was fraudulent or otherwise." In those cases the court was considering proceedings for relief in equity ; but the rule is of general application. If fraud is relied on as a defense to an action at law, the facts constituting the fraud must be stated: *Little v. Thropp,*

245 Pa. 539, 544, 91 A. 924 (1914). Even if evidence of conspiracy is received, it is first the duty of the judge to decide whether it is sufficient to be submitted to a jury (or other fact finding tribunal) to find the fact of conspiracy: cf. *Novic v. Fenics*, 337 Pa. 529, 11 A. 2d 871 (1940).

"When conspiracy is alleged, it must be proven by full, clear and satisfactory evidence. When plaintiff also relies on subsequent acts to establish the conspiracy, these acts must be such as to clearly indicate the prior collusive combination and fraudulent purpose, not slight circumstances of suspicion, and these subsequent acts must be such as to warrant the belief and justify the conclusion that the subsequent acts were done in furtherance of the unlawful combination and in pursuance of the scheme to wreck the business and cause the bankruptcy. . . . Ballantine v. Cummings, 220 Pa. 621, 631-2, 70 A. 546 [1908]." *Novic et al. v. Fenics et al.*, 337 Pa. 529, 535, 11 A. 2d 871 (1940).

The averment in paragraph 14 is a mere statement of a legal conclusion, which, as the contract shows, is without meaning. Averments are taken against the pleader: *Schwartz v. Manufacturers' Casualty Ins. Co.*, 335 Pa. 130, 132, 6 A. 2d 299 (1939); *Humes v. Kramer*, 286 Pa. 251, 254, 133 A. 262 (1926). Plaintiffs aver that defendants conspired to "give" the coal to Sweeney; to make a gift to him. But that is not what the contract does; it provides that Sweeney shall pay for the coal and do other things specified. On page 16 of appellant's brief they say the word " 'give' contained in the 14th paragraph of the complaint was used advisedly," because Sweeney assumed no obligation until he removed the coal. We regard the allegation as a metaphorical characterization which, in the light of the contract, adds nothing to the conspiracy charge; nor do paragraphs 15 and 16 state facts showing an unlawful conspiracy on the part of Sweeney. It is true that he signed the

contract, but so far as averments of fact show, there was no legal reason why he should not have signed it. If one has a legal right to do a particular thing the law will not inquire into his motive for doing it: *Kirmse et al. v. Adler et al.*, 311 Pa. 78, 86, 166 A. 566 (1933); *Rosenblum v. Rosenblum*, 320 Pa. 103, 108, 181 A. 583 (1935). At the oral argument in this Court appellants' counsel was asked to state what facts he was prepared to prove from which it could be inferred that Sweeney participated in the alleged conspiracy but he was unable to state any facts. He stated that he expected to be able to prove the facts averred in the bill, but that, as we have said, is not sufficient. General conclusions, without adequately supporting facts, will not sustain the pleading; facts must be pleaded. Comparison with *Seltzer v. Metropolitan Electric Company et al.*, 199 Pa. 100, 48 A. 861 (1901) will illustrate the inadequacy of plaintiffs' pleading and the demurrable character of their bill. In the *Seltzer* case, in which the bill was held sufficient and not demurrable, the taxpayers had averred, inter alia, that the defendant Electric Company in obtaining the contract to furnish electric lighting to the city, had bribed certain named councilmen by paying them $250.00 each for their votes. Other averments of facts also directly connected the Electric Company with the unlawful action of the city councils.

In disposing of this appeal, it is unnecessary to deal with other contentions relating to the conduct of Turner and Cochran and the preliminary objections filed by them, which, we understand, are now pending in the court below.

Decree affirmed at appellants' costs.