602 A.2d 324

**Rolf LARSEN, Appellant,**

**v.**

**PHILADELPHIA NEWSPAPERS, INC., Knight–Ridder Newspapers, Inc., PG Publishing Co., William Block, Paul Block, Jr., Daniel R. Biddle, Edwin Guthman, Sam S. McKeel, Fritz Huysman, Eileen Foley, John G. Craig, Jr., and Robert Surrick.**

Superior Court of Pennsylvania.

Argued July 31, 1991.

Filed Dec. 11, 1991.

Reargument Denied Feb. 21, 1992.

David J. Armstrong, Pittsburgh, for appellant.

Thomas B. Rutter, Philadelphia, for Surrick, appellee.

Before OLSZEWSKI, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge.

On this appeal, we are asked to determine whether summary judgment was properly granted an individual defendant in an action claiming defamation and invasion of privacy. Appellant, Rolf Larsen, a member of the Pennsylvania Supreme Court, filed his Fourth Amended Complaint against Philadelphia Newspapers, Inc.; Knight–Ridder Newspapers, Inc.; Daniel R. Biddle; Edwin Guthman; Sam S. McKeel; PG Publishing Co.; William Block; Paul Block, Jr.; Fritz Huysman; Eileen Foley; John G. Craig, Jr. (collectively, PN/PG defendants); and Robert Surrick.

The basis of the cause of action asserted against Surrick was an allegation that he acted in concert with, or as mutual agent of, the PN/PG defendants in publishing defamatory articles regarding Larsen, and that Surrick invaded the privacy of Larsen by turning over confidential transcripts to the PN/PG defendants which resulted in the publication of transcript excerpts that cast Larsen in a false light. Following discovery, Surrick moved for, and was granted, summary judgment, prompting this appeal.

Surrick was a member of the Judicial Inquiry and Review Board (JIRB) during an investigation of Larsen. Surrick, through his attorney James Eiseman, Jr., filed a petition entitled, "In re proceedings of the Judicial Inquiry and Review Board concerning 'XYZ' a certain member of the Judiciary," with the Pennsylvania Supreme Court. The petition was filed regarding the investigation of Larsen. The PN/PG defendants published articles regarding the disposition of that petition which are allegedly defamatory of Larsen as the articles state that Larsen breached the

canons of judicial ethics by participating in the decision of a case in which he was personally involved.

In response to Surrick's motion for summary judgment, Larsen presented an affidavit of Patrick Tassos, a former deputy prothonotary of the Pennsylvania Supreme Court, which averred that Surrick was in the prothonotary's office with Daniel Biddle, an employee of the PN defendants, when the "XYZ" petition was filed. Surrick presented the affidavit of Attorney Eiseman, which averred that Eiseman, rather than Surrick, filed the "XYZ" petition, and the docket entries confirming that fact. Eiseman's affidavit further averred that neither Surrick nor Biddle was present when the "XYZ" petition was filed. Surrick also presented his own affidavit and the answers to interrogatories of the PN/PG defendants which stated that Surrick had not delivered a copy of the transcripts of the JIRB proceedings to the PN/PG defendants.

It is undisputed that the PN/PG defendants published articles containing excerpts from the confidential JIRB transcripts. The PN/PG defendants' answers to interrogatories averred that Surrick was not involved in the editorial decision to publish the transcript excerpts.

On this appeal, Larsen asks us to review whether the most distinguished trial judge, the Honorable Albert E. Acker, S.J., since retired, committed error in granting Surrick's motion for summary judgment. Larsen contends that Judge Acker erred by ruling that there were no material questions of fact and that the pleadings and other documents would not support a conclusion that Surrick did act individually or in concert with any of the other defendants in defaming Larsen as alleged in Count III of the Fourth Amended Complaint or in intruding upon Larsen's privacy by placing him in a false light, as alleged in Count V of the Complaint. Larsen argues that the trial court erred by reading the record to favor the moving party and applying the incorrect standard to judge his burden as to the defamation claim. As to the invasion of privacy claim, Larsen argues that the trial court granted summary judgment in

violation of the *Nanty–Glo* rule. After a careful review of the record and the arguments of the parties, we affirm the summary judgment.

We are mindful that this appeal involves only Count III and Count V of the Fourth Amended Complaint and only those portions of Count III and Count V that implicate Surrick. We do not review, nor express any opinion concerning, the validity of the Fourth Amended Complaint as it seeks to impose liability on any named defendants other than Surrick.

The original complaint had been filed in equity, contained seven counts within one hundred twenty-nine numbered paragraphs, and sought an injunction as well as money damages on various theories of liability. On an earlier appeal to this court, following preliminary objections and the filing of an amended complaint, we were called upon to consider whether, *inter alia*, a private cause of action existed for an alleged breach of the confidentiality provisions of Article V, Section 18(h) of the Pennsylvania Constitution. *Larsen v. Philadelphia Newspapers, Inc.*, 375 Pa.Super. 66, 543 A.2d 1181 (1988) (*en banc*) *alloc. denied*, 520 Pa. 597, 552 A.2d 251, *and in* 520 Pa. 606, 553 A.2d 968 (1988), *cert. denied*, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). We were also asked to decide whether the amended complaint stated a cause of action for invasion of privacy under Section 652B of the Restatement (Second) of Torts and for invasion of privacy: false light under Section 652E. On that prior appeal, we also considered whether the Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended and renumbered 42 Pa.C.S. § 4135, dealing with out-of-court publications respecting the conduct of judges, created a separate cause of action for defamation.

While holding that the amended complaint then under review did set forth a cause of action for invasion of privacy: false light against the news media defendants, we declined to find private, independent causes of action for alleged breach of the confidentiality provisions of the Pennsylvania Constitution or for violation of the statute dealing

with out-of-court publication of a judge's conduct in connection with a matter pending before any tribunal. *Id.*

We have carefully reviewed the entire certified record and the briefs of the parties. We have had the benefit of oral argument from distinguished members of the bar on behalf of both Larsen and Surrick. We are unable to discern any genuine issues as to any material facts. We find that Surrick is entitled to judgment, on this record, as a matter of law. We therefore affirm the order dated December 7, 1990, entered December 10, 1990, as well as the judgment entered January 2, 1991, in favor of Surrick and against Larsen.

■ Our Supreme Court has recently set forth the principles governing the grant or denial of a motion for summary judgment as follows:

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of summary judgment may be granted only in cases where the right is clear and free from doubt.... The moving party has the burden of proving the nonexistence of any genuine issue of material fact.... The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party....

Rule 1035 also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.* If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d) (Emphasis added). Therefore, where a motion for

summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial. . . .

*Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991) (citations omitted). As to our scope of review, we will overturn entry of summary judgment by the trial court only if there has been an error of law or a clear abuse of discretion. *Tonkovic v. State Farm Mutual Automobile Ins. Co.,* 407 Pa.Super. 522, 524, 595 A.2d 1269, 1270 (1991). With these basic principles in mind, we review the matter now before us.

In his Statement of the Case, Brief of Appellant, pages 5–6, in accordance with Pa.R.A.P. 2117(a)(4), Larsen sets forth the following statement of facts necessary to be known in order to determine the points in controversy:

Count III of the Fourth Amended Complaint alleges the following: On April 29, 1983, Surrick filed with the Supreme Court of Pennsylvania a document which was captioned "Application of Robert B. Surrick, a Member of the Judicial Inquiry and Review Board, in RE: Proceedings of the Judicial Inquiry and Review Board Concerning 'XYZ' a Certain Member of the Judiciary" (hereinafter referred to as the "XYZ Petition") and titled the document "Application for Leave to File Petition." (R. 30a). The XYZ Petition did not identify the member of the Judiciary who was the subject of the JIRB Inquiry.

On Friday, May 6, 1983, the Supreme Court, including Appellant, voted 5 to 2 to deny the XYZ Petition,

Subsequent thereto, the Defendants, acting individually, as agents of each other, and in concert with each other, published, republished, or caused to be published a series of articles regarding the XYZ Petition which defamed Appellant.

In Count V of [Larsen's Complaint], it is alleged that the Defendants have a complete copy of the transcript of the proceedings before JIRB [Judicial Inquiry and Review

Board] involving [Larsen], even though the transcript was to remain confidential.

On numerous occasions, Defendants have published, republished or caused to be republished confidential information which places [Larsen] in a false light by publishing selected excerpts of the alleged confidential JIRB transcript. [Larsen] has asserted that all of the Defendants, including Surrick, acted in concert with one another to place [Larsen] in the false light.

Added to these facts, Larsen relies upon the several affidavits of Patrick Tassos filed October 5, 1990 and October 31, 1990, Reproduced Record (R.R.), pgs. 110a–118a; Supplemental Reproduced Record (S.R.R.), pgs. 228–237, which allege, when read in the light most favorable to Larsen, that on April 21, 1983 or on some other date in the Spring of 1983, Surrick entered the Prothonotary's Office for the Supreme Court in Philadelphia accompanied by Daniel R. Biddle. While in the Prothonotary's Office, Surrick attempted to file a "Removal Petition" under seal, which attempt was rejected by then-Deputy Prothonotary Tassos.

■ As to Judge Acker's conclusion that Count III did not set forth a cause of action against Surrick, when considered along with the pleadings, depositions, answers to interrogatories, and admissions on file, Larsen contends that he presented sufficient evidence, through the affidavit(s) of Patrick Tassos, from which a jury could infer that Surrick was "acting in concert" with the other defendants in the publication of defamatory articles. Larsen argues that the trial court erred in requiring a higher standard of proof—that which is required to establish a criminal conspiracy—versus that which is required to establish that Surrick was "acting in concert." We cannot agree.

Larsen relies heavily, if not exclusively, upon the facts set forth in Tassos' affidavits in arguing that summary judgment in favor of Surrick was not appropriate. At oral argument on July 31, 1990, counsel for Larsen was asked whether there were any additional facts, other than Sur-

rick's presence in the public Prothonotary's Office on or about April 21, 1983, that support Larsen's contention that Surrick was acting in concert with Biddle or any of the other defendants with respect to the publishing, republishing, or causing to be published, of certain allegedly defamatory articles. Counsel for Larsen replied that he was not aware of any other facts, but that he intended to proceed with further discovery upon remand of the case.

From the docket entries, it would seem that discovery on behalf of Larsen began as early as November 14, 1983 when a Request for Production of Documents was filed along with the original complaint and continued almost seven years later when Larsen executed and verified, on October 26, 1990, Plaintiff's Response to Defendant's Interrogatories to Plaintiff, and Plaintiff's Response to Defendant's Request for Production of Documents. S.R.R., pgs. 1, 187, 194.

Turning to the Tassos affidavit itself, filed October 5, 1990, Larsen sets forth in his brief the following paragraphs from that affidavit as evidence that Surrick was "acting in concert" with the other defendants in the publication of the allegedly defamatory material:

3. On April 21, 1983, I was working in the Pennsylvania Supreme Court's Prothonotary's Office when I observed Robert Surrick enter the Prothonotary's Office.

4. Mr. Surrick was accompanied by another man who I later learned was Daniel R. Biddle.

5. On April 23, 1983, while at the Prothonotary's Office and in the accompaniment of Mr. Biddle, Mr. Surrick filed a document with the Pennsylvania Supreme Court which was captioned "Application of Robert B. Surrick, a member of the Judicial Inquiry and Review Board, In Re: Proceedings of the Judicial Inquiry and Review Board concerning 'XYZ', a certain member of the Judiciary" (" 'XYZ' Petition").

6. It was apparent that Mr. Surrick and the other man who I later learned was Mr. Biddle were together when

Mr. Surrick filed the "XYZ" Petition with the Pennsylvania Supreme Court Prothonotary.

Affidavit of Patrick Tassos in Opposition to Robert Surrick's Motion for Summary Judgment, filed October 5, 1990; R.R., pgs. 112a–113a; S.R.R., pgs. 230–231.

In presenting his argument that Judge Acker erred in granting summary judgment as to Count III, Larsen twice asserts that "if a jury can 'infer from the circumstances' a factual finding, then Summary Judgment is not proper." Brief for Appellant, pages 12, 15, *citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142, 155, (1970). We have found nothing in that case to support Larsen's assertion that juries may infer factual findings from the circumstances.

The *Adickes* case involved a 42 U.S.C. § 1983 civil rights action brought by Sandra Adickes, a white, volunteer teacher at a "Freedom School" for African–American children in Hattiesburg, Mississippi against S.H. Kress and Company. In 1964, Adickes had entered a Kress store with six of her students to eat lunch. The waitress took the students orders but refused to serve Adickes because she was a white person in the company of Negroes. Upon leaving the store, Adickes was arrested by the Hattiesburg police on a vagrancy charge, prompting her § 1983 action against the store.

When *Adickes* reached the Supreme Court, a trial had already been conducted with a result favorable to S.H. Kress & Co. The first count of the complaint, which alleged violation of Adickes' rights under the equal protection clause of the Fourteenth Amendment, had been taken from the jury on a motion for a directed verdict when Adickes had not proved, at trial, that other instances of discrimination against whites in the company of African–Americans had occurred in the community. The issue under review by the Supreme Court was whether error had occurred in granting summary judgment as to the second count, before trial, where Adickes had alleged a conspiracy between the store and the police officer.

The District Court had granted summary judgment as to the second count for failure "to allege any facts from which a conspiracy might be inferred." 252 F.Supp. 140 (1966). The Second Circuit Court of Appeals affirmed. 409 F.2d 121 (1968). On review, the Supreme Court noted that, in opposing summary judgment, Adickes pointed out that S.H. Kress & Co. failed to dispute (1) the allegation in her complaint, (2) a statement at her deposition, and (3) an unsworn statement by an employee of S.H. Kress & Co., all to the effect that there was a police officer in the store at the time Adickes was refused restaurant service, and that this was the police officer who subsequently arrested her on a charge of vagrancy immediately upon her departure from the store. *Adickes,* 398 U.S. at 156–158, 90 S.Ct. at 1607–08, 26 L.Ed.2d at 153–154.

In reversing and remanding for further proceedings, the Supreme Court expressly found that S.H. Kress & Co. had failed to carry its burden of showing the absence of any genuine issue of fact. *Adickes,* 398 U.S. at 153, 157, 158–59, 90 S.Ct. at 1606, 1608, 26 L.Ed.2d at 151–152, 154–155. In reviewing the various allegations as to the presence of a police officer in the store and S.H. Kress & Co.'s failure to disavow that presence, either through the affidavits of the police officers actually submitted or the affidavits of the store employees that were noticeably never submitted, the Court stated:

> Given these unexplained gaps in the materials submitted by respondent, we conclude that respondent failed to fulfill its initial burden of demonstrating what is a critical element in this aspect of the case—that there was no policeman in the store. If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a "meeting of the minds" and thus reached an understanding that petitioner should be refused service. Because "[o]n summary judgment the inferences to be drawn from the underlying facts contained in [the moving party's] materi-

als must be viewed in the light most favorable to the party opposing the motion," we think respondent's failure to show there was no policeman in the store requires reversal.

. . . .

... Because respondent did not meet its initial burden of establishing the absence of a policeman in the store, petitioner here was not required to come forward with suitable opposing affidavits.

*Adickes*, 398 U.S. at 158–159, 160, 90 S.Ct. at 1609, 1610, 26 L.Ed.2d at 155–156.

In the *Adickes* case, the alleged presence of a policeman in the store immediately prior to the arrest of Adickes outside the store on a groundless charge of vagrancy was crucial to the Court's conclusion that a jury might infer a conspiracy between the store employee and the police officer, *in light of the sequence that followed. Adickes*, 398 U.S. at 157, 158, 90 S.Ct. at 1608, 1609, 26 L.Ed.2d at 154, 155. This did not involve the Court declaring, as represented by Larsen, that the jury could "infer from the circumstances" a *factual finding* but simply indicated the traditional rule that where there are sufficient facts alleged to permit a *conclusion*, those facts must be submitted to the jury where the undisputed facts would not entitle a moving party to judgment as a matter of law.

*Adickes* does not, in our view, support Larsen's position on this appeal. There, the moving party was faced with allegations not only in the complaint but also in the statements of the plaintiff and other witnesses that an understanding between the defendant store's employees and the police might very well have existed, given what happened immediately after the police officer was in the store observing the plaintiff in the company of six of her students. Moreover, the affidavit of the store manager admitted that a pre-arranged tacit signal had been established between himself and the store's food counter supervisor to ensure that Adickes would be refused service. *Adickes*, 398 U.S. at 154–155, 90 S.Ct. at 1606–07, 26 L.Ed.2d at 152.

By contrast, in opposing the motion for summary judgment, Larsen merely set forth the following facts: Surrick and Biddle were together in the Prothonotary's Office. Tassos refused to accept a document that Surrick was trying to file. *See* Amended Affidavit, filed October 31, 1990, 5.

As part of his argument that the trial court committed error in granting summary judgment to Surrick on Count III, Larsen contends that Judge Acker held him to a higher standard than is required to establish concerted action in a civil case, and that as the non-moving party, he did not have the burden of establishing a conspiracy. Larsen contends that he never alleged that Surrick and the other defendants engaged in a conspiracy. Rather, Larsen urges that he was merely required to introduce evidence from which a jury could infer that Surrick was acting in concert with the other defendants.

Recently, our sister Commonwealth Court has considered the requirements for a viable cause of action involving concerted action in a suit against certain school districts and their superintendents alleging defamation. Speaking through Senior Judge, formerly Justice, Alexander F. Barbieri, the Court said:

As to whether appellees [superintendents] acted in concert or entered into an agreement, however, appellant merely alleges that they did so, but fails to set forth any supporting facts such as meetings, conferences, telephone calls, or joint signatures on written recommendations sent to potential employers to indicate a conspiracy. Nor does appellant allege facts inferring conspiratorial conduct. *Contrast Commonwealth v. Musser Forests, Inc.*, 394 Pa. 205, 146 A.2d 714 (1958) and *Baker* [*Baker v. Rangos*, 229 Pa.Super. 333, 324 A.2d 498 (1974) ] where facts are set forth indicating joint activities. *Compare Landau v. Western Pennsylvania National Bank*, 445 Pa. 217, 282 A.2d 335 (1971).

Although appellant has clearly pled parallel conduct by appellees [superintendents], such conduct alone is insuffi-

cient to establish a civil conspiracy just as bald assertions thereof are insufficient. *Burnside* [*Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985)]. "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal Co.*, 488 Pa at 212, 412 A.2d at 473 [*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979)]. For this reason, we find, albeit on a different basis than that used by the trial court, that the demurrer to count II was properly sustained and the count was properly dismissed for failure to sufficiently set forth all elements necessary to a cause of action for civil conspiracy to defame as required by Pa.R.C.P. No. 1019(a). *Petula v. Mellody*, 138 Pa.Cmwlth. 411, 418–419, 588 A.2d. 103, 107–108 (1991).

Here, it is not reasonable to infer merely from the presence of Surrick in the Prothonotary's Office with Biddle, that Surrick intended to act in concert with the PN/PG defendants to defame Larsen. All that has been shown is Surrick's presence in the Prothonotary's Office with Biddle and Surrick's attempt to file the "XYZ" Petition. This occurred before either Surrick or Biddle could have been aware that Larsen would participate in the decision on the "XYZ" Petition. It was that *later* participation which triggered the subsequent newspaper articles, the publication of which is claimed to be defamatory.

Accepting Larsen's contention that the trial court improperly utilized a criminal conspiracy standard, we are puzzled by counsel's failure to apprise this Court as to exactly what standard should be applied. Assuming that the correct standard is the theory of concerted action, a cause of action for concerted activity under Section 876 of the Restatement (Second) of Torts has been recognized by our Pennsylvania courts. *Jefferis v. Commonwealth*, 371 Pa.Super. 12, 17–19, 537 A.2d 355, 358–59 (1988); *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 280–84, 505 A.2d 973, 982–84 (1985); *Cummins v. Firestone Tire & Rubber Co.* 344

Pa.Super. 9, 21–22, 495 A.2d 963, 969–70 (1985); *Kline v. Ball,* 306 Pa.Super. 284, 287, 452 A.2d 727, 728 (1982); *see and compare Moses v. McWilliams,* 379 Pa.Super. 150, 192–193, 549 A.2d 950, 971–72 (1988) (Cirillo, J., concurring and dissenting).

Section 876 of the Restatement provides:

### § 876. Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

As this court pointed out in *Jefferis,* the Restatement requires both an intent to act and an act. *Jefferis,* 371 Pa.Super. at 18, 537 A.2d at 358. Moreover, the Restatement adds the further element that the act must have been a substantial factor in assisting in the commission of the tort. *Id.* In *Jefferis,* we stated:

Factors relevant to determining whether the defendant's act was a substantial factor in the commission of the tort include, but are not limited to, the nature of the act encouraged, the amount of assistance given, the defendant's presence or absence at the time of the tort, the defendant's relation to the tortfeasor and the foreseeability of the harm that occurred.

*Id.*

Applying these principles to both Count III and Count V, we cannot conclude that Surrick is liable under any subsection of Section 876 of the Restatement. There is absolutely no allegation of fact that Surrick, himself, committed a tortious act. Filing, or attempting to file, a pleading in a

public office cannot be deemed a tortious act under Section 876(a). There are no other acts directly attributed to Surrick.

If we look to subsections (b) and (c) of Section 876, one could hardly conclude that the act of trying to file a withdrawal petition would give substantial assistance to the other defendants in whatever future conduct they might have contemplated. Nor does Surrick's own conduct, attempting to file the withdrawal petition, constitute any breach of duty owed Larsen.

While we may not agree with the trial court's complete analysis, we have no reservation that the result was correct. On appeal, the reviewing court may affirm for any sound reason, and is not limited to the grounds relied upon by the trial court if the result is correct. *McAdoo Borough v. Com., Pennsylvania Labor Relations Bd.*, 506 Pa. 422, 428 n. 5, 485 A.2d 761, 764 n. 5 (1984); *E.J. McAleer & Co. v. Iceland Products, Inc.*, 475 Pa. 610, 613 n. 4, 381 A.2d 441, 443 n. 4 (1977); *Flick v. Flick*, 408 Pa.Super. 110, 121 n. 2, 596 A.2d 216, 222 n. 2 (1991); *McKenna v. Mooney*, 388 Pa.Super. 298, 300, 565 A.2d 495, 496 (1989); *compare Kniaz v. Benton Borough*, 112 Pa.Cmwlth. 416, 419, 535 A.2d 308, 310 (1988) (where trial court's decision is proper under the law and the facts, reviewing court may affirm on legal grounds other than those expressly relied on by trial court, where alternative basis has been fully briefed and argued on review).

Counsel for Larsen asserts, Brief of Appellant, page 16, that if the facts before the Court create any dispute as to the "exact nature of the relationship" between the parties, the Court must not grant summary judgment, citing to *Juarbe v. City of Philadelphia*, 288 Pa.Super. 330, 431 A.2d 1073 (1981). We understand that case differently. What the *Juarbe* case expressly held was:

If the facts as to the relationship are in dispute, a jury question is presented as to the nature of the relationship between the parties. *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 486, 70 A.2d 299, 300–301 (1950). If

the facts are not in dispute, the question of the relation-ship between the parties is one which is properly deter-mined by the court. *Feller v. New Amsterdam Casualty Co., Id.*

*Juarbe,* 288 Pa.Super. at 335, 431 A.2d at 1076. The same principle remains true today. *Joyner v. Harleysville Insur-ance Co.,* 393 Pa.Super 386, 393, 574 A.2d 664, 668 (1990) *alloc. denied,* 527 Pa. 587, 588 A.2d 510 (1991).

On this appeal, accepting everything set forth by the plaintiff in his Complaint and the accompanying affidavits, the facts are not in dispute. The question as to the relation-ship between Surrick and the other defendants, therefore, is one which was properly determined by Judge Acker and which, properly, is subject to review by this court.

■ We now turn to consideration of Larsen's contention that his cause of action against Surrick under Count V of the Fourth Amended Complaint was erroneously dis-charged. While it is true that a previous *en banc* decision of this court approved the invasion of privacy: false light cause of action as pled, it was on a wholly different basis than now confronts us. In the earlier appeal, we said;

As for Count V's incorporation of paragraphs 59, 61, 63, 65 & 67, we deem each sufficient to allege a cause of action under Section 652E and to withstand a demurrer. The same can be said with regard to the entire Count V segment of the appellant's complaint. Accordingly, the appellant need not amend Count V. To the extent that the court below so directs, its order is reversed.

*Larsen v. Philadelphia Newspapers, Inc.,* 375 Pa.Super. 66, 84, 543 A.2d 1181, 1190. Earlier in that opinion, we observed:

At bar, the appellant's incorporation of almost all of the previous 115 paragraphs into Count V necessitates that these paragraphs (and the material facts asserted therein) be viewed as a whole and are to be given every reason-able inference deducible therefrom in assessing the pre-liminary objections of the appellees in regard thereto.

*Sinn v. Burd, supra.* [*Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979)]. As such, we find that Count V withstands the challenge of the appellees' preliminary objections.

*Larsen,* 375 Pa.Super. at 83, 543 A.2d at 1189.

The complaint under review on the earlier appeal, and specifically Count V of that complaint, was an entirely different document than the one we now review. The Count V before this court only incorporates by reference paragraphs 1 through 12 of this Fourth Amended Complaint. *See* Complaint filed October 6, 1989, page 63, 128; R.R. pg. 82a; S.R.R. pg. 77. The Count V examined in the earlier appeal had incorporated "almost all of the previous 115 paragraphs" and specifically paragraphs 59, 61, 63, 65 and 67 for purposes of our earlier review.

It is true that issues decided by an appellate court on a prior appeal will not be reconsidered on a second appeal. *Daniels v. State Farm Mutual Automobile Insurance Co.,* 305 Pa.Super. 352, 356, 451 A.2d 684, 686 (1982). However, we are not here being asked to review the same issue, nor does Larsen contend otherwise. He has not even suggested this point. Clearly, whether summary judgment is appropriate as to Count V on this Fourth Amended Complaint is a far distant issue from whether preliminary objections should have been sustained as to the Count V contained in the First Amended Complaint, which by virtue of the incorporation of numerous paragraphs not now before us, was an entirely different pleading. *Pennsylvania Public Utility Commission Bar Assn. v. Thornburgh,* 62 Pa.Cmwlth. 88, 91–93, 434 A.2d 1327, 1329 (1981), *aff'd. per curiam* 498 Pa. 589, 450 A.2d 613 (1982). *Melendez by Melendez v. City of Philadelphia,* 320 Pa.Super. 59, 62 n. 2, 466 A.2d 1060, 1062 n. 2 (1983).

On this appeal, Larsen asserts that the Defendants placed him in a false light by publishing selected excerpts of the alleged confidential Judicial Inquiry and Review Board (JIRB) transcripts. Brief of Appellant, page 17. He has asserted that all of the Defendants, including Surrick, acted

in concert with one another to place Larsen in a false light by publishing selected excerpts to the JIRB transcript which was required by law to remain confidential. *Id.* The thrust of Larsen's argument on this issue concentrates on the affidavit of Surrick and the Answers to Interrogatories of the other Defendants, in seeking to find error in the trial court's order granting summary judgment. This focus is misplaced.

In support of his motion for summary judgment, Surrick offered his own affidavit and the answers to interrogatories filed by the newspaper defendants. Judge Acker considered only the answers to interrogatories of the newspaper defendants in granting the summary judgment motion. Larsen relies upon *Nanty–Glo v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932) for the proposition that testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford a sufficient basis for the entry of summary judgment. Larsen goes on to cite *Peluso v. Walter,* 334 Pa.Super. 609, 483 A.2d 905 (1984) for the same principle. He contends that by relying on the answers to interrogatories of the newspaper defendants, Judge Acker committed error in granting the summary judgment motion as to Count V. We must disagree.

*Peluso* involved an instance where the trial court considered depositions and testimonial affidavits in resolving a material issue of fact so as to grant summary judgment. To date, the *Nanty–Glo* rule has been applied to prohibit summary judgments when the trial court has considered either depositions or affidavits of the moving party or his witnesses to resolve material issues of fact—the idea being that credibility determinations must be left to the jury. We are not prepared to extend the *Nanty–Glo* rule to encompass answers to interrogatories.

Moreover, our review of all of the pleadings and documents persuades us that Surrick is entitled to judgment without reference to any of the testimonial affidavits of either himself or his witnesses. Where the pleadings are

themselves lacking in sufficient factual averments to set forth a cause of action, under the Fourth Amended Complaint, Larsen may no longer rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided by Rule 1035, must set forth specific facts showing that there is a genuine issue for trial. Pa. R.C.P. 1035(d). This he has failed to do.

Even if Larsen were correct that the trial court erred in "accepting the uncontradicted Answers to Interrogatories of the newspapers as being true and correct" and "in allowing Surrick's self-serving Affidavits and the self-serving responses from Defendants who are alleged to have acted in concert with Surrick to negate Appellant's claims," Brief of Appellant, page 18, we are not provided with any clear statement of facts as to exactly what Larsen's claim(s) against Surrick might be.

Larsen's Brief does set forth the following:

Appellant's claim in Count V of the Fourth Amended Complaint that Surrick did, indeed, act in concert with the other Defendants in the publication of excerpts from the JIRB transcript raises a genuine issue of material fact which must be decided by a jury. Appellant respectfully suggests that the broad denials by the Defendants that Surrick in no way participated in the publication of the transcript excerpts are not sufficient to contradict the logical inference that Surrick supplied the transcript to the newspaper Defendants.

Larsen fails to set forth, either in Count V of the Complaint or in his Brief, the *facts*, if any, which lead toward the "logical inference" suggested.

Count V consists of paragraphs 128 through 200 of the Fourth Amended Complaint, together with paragraphs 1 through 12 which are incorporated in Count V by reference. Within those eighty-five paragraphs, there are only four which expressly refer to Surrick. They are:

12. Defendant Robert Surrick is an individual with an address at 1500 McDaniel Drive, Westown Business Center, Westchester, PA 19382, who at relevant times herein

acted individually (not in his official capacity with the Judicial Inquiry Review Board), in concert with, and/or as an agent, servant and employee of the Inquirer and Post-Gazette.

. . . .

176. On Friday, April 21, 1983, Defendant Robert Surrick filed with the Supreme Court of Pennsylvania a document which was captioned "Application of Robert B. Surrick, a member of the Judicial Inquiry and Review Board, In Re: Proceedings of the Judicial Inquiry and Review Board concerning 'XYZ', a certain member of the Judiciary" (hereinafter referred to as "XYZ Petition") and titled the document "Application for leave to File Petition."

177. The relief prayed for by Robert B. Surrick, Esquire, (hereinafter "Surrick") in the XYZ Petition was "leave to file his Removal Petition under seal, or in the alternative, grant him leave to file his Removal Petition without placing it under seal." The "Removal Petition" was not attached to or made a part of Surrick's filed document entitled "Application for Leave to File Petition".

. . . .

180. No oral argument had been made to the Supreme Court of Pennsylvania by or on behalf of Surrick and no documents, other than the XYZ Petition, were part of the record to be considered by the Supreme Court when the Supreme Court decided whether to afford the relief requested in the XYZ Petition.

Fourth Amended Complaint, pgs. 4, 74–75; R.R., pgs. 24a, 93a–94a; S.R.R., pgs. 19, 88–89.

Here, we do not even have allegations of parallel conduct as found in *Petula v. Mellody, supra.* Certain paragraphs within Count V refer to conduct occurring on May 8, 9, 10, 11, 12 and 14, 1983, and June 11, and 15, 1983 without once referring to Surrick. *See* Complaint, 138–154; R.R., pgs. 84a–88a; S.R.R., pgs. 79–83. There are also allegations concerning a sixty-eight page volume which was published,

again without once referring specifically to Surrick. *Id.*, 155–157; R.R., pgs. 88a–89a; S.R.R., pgs. 83–84. There are additional allegations of conduct by the Defendants on November 19, 20, 1982, March 9, 1983, May 8, 13, 29, 1983 and June 15, and 18, 1983, all without specific reference to Surrick. *Id.*, 169–175, 182–191; R.R., pgs. 91a–93a, 94a–97a; S.R.R., pgs. 86–88, 89–92.

Nowhere does Larsen in Count V of the Fourth Amended Complaint, set forth or allege that Surrick knew that the conduct of the other Defendants constituted a breach of duty owed Larsen. Nor does Larsen allege in Count V that Surrick, knowing of such a breach, gave substantial assistance or encouragement to the other Defendants. Nowhere does Larsen in Count V allege that Surrick gave substantial assistance to the other Defendants in publishing the article in question. The only conduct expressly attributed to Surrick, the attempt to file the Removal Petition, cannot as a matter of law be construed as constituting a breach of duty to Larsen, for the reasons set forth above.

It is only disputes as to *material* issues of fact which bar summary judgments. *Pierce v. Com., Pennsylvania Board of Probation and Parole*, 46 Pa.Cmwlth. 507, 511–512, 406 A.2d 1186, 1188–89 (1979). A fact is material if it directly affects the disposition of the case. *Allen v. Colautti*, 53 Pa.Cmwlth. 392, 398, 417 A.2d 1303, 1306–07 (1980). Disputed facts which are not *material* to any of the critical issues raised in a petition for relief will not preclude entry of summary judgment. *Pierce*, 46 Pa.Cmwlth. at 508, 406 A.2d at 1187. On this appeal, unless the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there exists a genuine issue as to some *material fact,* we must then examine the record to determine whether Surrick is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b).

We find the Transcript of Proceedings in the trial court before the Honorable Albert E. Acker on January 9, 1991 revealing. At a hearing convened to consider a JIRB motion to suppress a subpoena of its records, the distin-

guished trial judge observed, when considering the continuing inability to move towards a trial of this case:

**THE COURT:** We will do that.

I think as a matter of fairness all of you should know what our position is concerning that [Pa.R.A.P. 1701. Effect of Appeal Generally]. We have a day coming up in February, and I forget which day we set, to have a pretrial conference all day long, at which time I hoped that we would resolve which portions of the publications go to the jury and all those multiple problems that we have. There is no sense in getting into that if in fact it is going to be a year or two years or five years, however long, before we get this matter for trial.

When they called me from the Supreme Court and asked me to take over, to take this case, they represented to me that it was ready for trial. I should have known better. They have never had a case ready for trial that they ask you to take over. I have written seven opinions since that time, and I have been trying, we set this thing for trial three different times, and through nobody's fault, we can't [get] it tried. That disturbs me a great deal. I don't think justice is done by the delays that are similar to what we have had in this case here.

This is a gut feeling and probably has no place here, but I don't know why Surrick was ever named in the first place, and what I was hoping, when we went through the motion for summary judgment, was that there would be affidavits filed on behalf of Justice Larsen as to what he had on this fellow, and as it turned out, as I viewed it, he didn't have anything on him except that he showed up perhaps in the Prothonotary's Office one day with somebody who is affiliated with the Philadelphia Newspapers. That is distressing. And now we have an appeal on that issue where the sole issue is is there enough evidence to hold him in, and we are going to take over a year or two to get this thing back down. I have trouble with that concept. I don't understand it

**MR. ARMSTRONG [Counsel for Plaintiff Larsen]:**
Well, there are a couple of other things, Your Honor.

Mr. Surrick was a member of the Board. Mr. Surrick had a copy of the transcript. Mr. Surrick has shown his personal deep animosity towards Justice Larsen. We didn't have the evidence of the thief committing the act. We weren't in the smoke filled room and couldn't show the conspiracy. The Court struck our one cause of action because we couldn't comply with the Court's perception of what the Superior Court said that we had to plead. United States Supreme Court cases say you can't expect to be in the smoke filled room and have eyewitness evidence of the conspirator's act. That's why circumstantial evidence, including that he was a JIRB member, with access to the transcript, in the company of Biddle from time to time and with deep animosity toward Larsen, those are all circumstantial matters, that if someday somebody permits that to go to the jury, they might someday find that he is liable. Further, we have never had the opportunity to take his deposition. I shouldn't say never had a chance. Please, I want to withdraw that. We didn't take his deposition. We now have it noticed. It could very well be in his deposition that he will say something which will create further circumstantial evidence.

So I agree with you, that it is not an appropriate part of this argument, but I needed to respond. There were certain reasons why the acts were taken.

Hearing Transcript, January 9, 1991, pgs. 46–49; S.R.R., pgs. 315–318.

The remarks of counsel for Larsen directed to the trial court on January 9, 1991, are consistent with counsel's representations to this court at oral argument on July 31, 1991. The present *facts* upon which Larsen is prepared to proceed against Surrick have been summarized by his counsel to consist of this: (1) Surrick was a member of the Judicial Inquiry and Review Board. (2) He had a copy of the JIRB transcript in the first Larsen matter. (3) He

appeared at the Prothonotary's Office one day with Biddle, an employee of the Philadelphia Newspapers, Inc. and a reporter for the *Inquirer*. And, although we have been unable to find this alleged in the Complaint or otherwise before the trial court when the motion for summary judgment was under consideration, (4) Surrick has shown a deep, personal animosity towards Larsen. These facts are far from sufficient to justify a conclusion that Surrick acted in concert with the other Defendants to place Larsen in a false light by publishing selected excerpts of certain JIRB transcripts. Larsen offers absolutely no other allegations to support what he would characterize as the "logical inference," that Surrick supplied the transcript to the newspaper Defendants. While we must, on review, remain prepared to resolve all doubts as to the existence of genuine issues of material facts in favor of Larsen, those facts must first be presented as part of the plaintiff's case. Neither this court nor a jury is free to speculate as to how the newspaper defendants may have come into possession of a JIRB transcript. And that "fact" has noticeably not been alleged in the Complaint.

We must reject counsel's invitation that now, nearly eight years after this case was filed, and following eleven judicial decisions in the trial court and another twenty in the appellate courts, we send this case back for additional discovery on the question of Surrick's liability. Counsel for Larsen may well be right that, if Surrick's deposition is permitted to be taken upon remand, "[i]t could very well be in his deposition that he [Surrick] will say something which will create further circumstantial evidence." Hearing Transcript, January 9, 1991, pgs. 48–49; S.R.R., pgs. 317–318. Counsel does not assert that they have not had any previous opportunity to depose Surrick. They simply have not taken his deposition. *Id.*

Judge Acker correctly stated in his Opinion accompanying the order now under review:

We appreciate Summary Judgment is to be entered only when the right is clear and free from doubt. This case meets those rigid requirements.

Regardless of whether the conduct of the Defendant Surrick was proper in endeavoring to present to the Supreme Court conduct of the Judiciary [sic] Inquiry and Review Board, to be actionable it must be tied to the conduct of the Defendant newspapers ... The mere fact that the Defendant appears in the Prothonotary's Office of the Supreme Court, along with Daniel R. Biddle, one of the Defendants, does not establish a [sic] that they were acting in concert.

Opinion, Acker, J., December 7, 1990, entered December 10, 1990, pg. 15, Brief of Appellant, following page 22; R.R. pg. 15a; S.R.R. pg. 266.

The order granting summary judgment to Robert Surrick must be affirmed in its entirety, albeit for reasons differing somewhat from those advanced by the trial court. *McAdoo Borough, supra; E.J. McAleer & Co., supra; Flick, supra; Petula, supra.* The order dated December 7, 1990, and entered December 10, 1991, granting judgment in favor of Robert Surrick and against Rolf Larsen, together with the judgment entered on the docket on January 2, 1991, are hereby AFFIRMED. The case is remanded for other proceedings involving the remaining defendants not inconsistent with this decision. Jurisdiction is relinquished.

FORD ELLIOTT, J., concurs in the result.

OLSZEWSKI, J., files a concurring and dissenting opinion.

OLSZEWSKI, Judge, concurring and dissenting:

On appeal, Justice Larsen argues that the trial court erred by reading the record to favor the moving party and applying the incorrect standard to judge his burden as to the defamation claim. As to the invasion of privacy claim, Justice Larsen argues that the trial court granted summary judgment in violation of the *Nanty–Glo* rule. After a

careful review of the record and the arguments of the parties, I concur in the result reached by my colleagues on Count III, but offer a differing rationale for so doing. I respectfully disagree with the majority's disposition of Count IV and submit this dissenting opinion in support thereof.

The relevant facts of this case may be summarized as follows. Surrick was a member of the Judicial Inquiry and Review Board (JIRB) while there was an investigation of Justice Larsen. Surrick, through his attorney James Eiseman, Jr., filed a petition entitled, "In re proceedings of the Judicial Inquiry and Review Board concerning 'XYZ' a certain member of the Judiciary," with the Pennsylvania Supreme Court. The petition was filed regarding the investigation of Justice Larsen. The PN/PG defendants published articles regarding the disposition of that petition which are allegedly defamatory of Justice Larsen as the articles state that Justice Larsen breached the canons of judicial ethics by participating in the decision of a case in which he was personally involved.

Justice Larsen presented an affidavit of Patrick Tassos, a former deputy prothonotary of the Pennsylvania Supreme Court, which averred that Surrick was in the prothonotary's office with Daniel Biddle, an employee of the PN defendants, when the "XYZ" petition was filed. Surrick presented the affidavit of attorney Eiseman averring that he, rather than Surrick, filed the "XYZ" petition and the docket entries confirming that fact. Eiseman's affidavit further averred that neither Surrick nor Biddle was present when the "XYZ" petition was filed. Surrick also presented his own affidavit and the answers to interrogatories of the PN/PG defendants which stated that Surrick had not delivered a copy of the transcripts of the JIRB proceedings to the PN/PG defendants.

It is undisputed that the PN/PG defendants published articles containing excerpts from the confidential JIRB transcripts. The PN/PG defendants' answers to interroga-

tories averred that Surrick was not involved in the editorial decision to publish the transcript excerpts.

Initially, our standard of review in these cases should be noted. Summary judgment is only proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b), 42 Pa.C.S.A. The movant bears the burden of proving the absence of a genuine, material factual dispute. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–206, 412 A.2d 466, 468–469 (1979). An appellate court must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). *See also, Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 297–298, 467 A.2d 330, 333 (1983) (*citing, Thompson Coal, supra*). It is not the trial court's function to decide factual issues; the inquiry is restricted to a determination of the existence of a material factual dispute. *Washington Federal Savings & Loan Assoc. v. Stein*, 357 Pa.Super. 286, 288–290, 515 A.2d 980, 981 (1986); *Wilk v. Haus*, 313 Pa.Super. 479, 482, 460 A.2d 288, 290 (1983); *Schacter v. Albert*, 212 Pa.Super. 58, 61–62, 239 A.2d 841, 843 (1968). All doubts as to the existence of a material factual issue must be resolved against the movant, as summary judgment is only proper in the clearest of cases. *Thompson Coal, supra.*

A motion for summary judgment will not be granted on the basis of the affidavit of the moving party. *Borough of Nanty–Glo v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). Thus, summary judgment may not be used as a device to defeat the jury's function of determining the credibility of witnesses. The *Nanty–Glo* rule likewise precludes reliance on affidavits and depositions of witnesses offered by the moving party. *Peluso v. Walter*, 334 Pa.Super. 609, 612–613, 483 A.2d 905, 907 (1984) (*quoting, Curran v. Philadelphia Newspapers, Inc.*, 497 Pa. 163, 183, 439 A.2d 652, 662 (1981)). A motion for summary judgment may properly be supported by admissions contained in the

depositions or affidavits of the opposing party or the opposing party's witnesses. *Garcia v. Savage*, 402 Pa.Super. 324, 330 n. 3, 586 A.2d 1375, 1378 n. 3 (1991) (*citing, Rivoli Theatre Co. v. Allison*, 396 Pa. 343, 152 A.2d 449 (1959)).

The substance of Justice Larsen's defamation claim is that Surrick acted in concert with the PN/PG defendants in the publication of the articles regarding the "XYZ" petition. The parties dispute whether this allegation is a claim that Surrick and the PN/PG defendants engaged in a civil conspiracy to defame Justice Larsen. There is conflicting authority as to whether a claim that two or more parties acted in concert necessarily implies a civil conspiracy. Prosser and Keeton treat concerted action as a joint enterprise to achieve a common purpose, thus constituting a civil conspiracy. *See*, PROSSER AND KEETON ON TORTS, 5th Ed., § 47, at 322–324. Black's Law Dictionary agrees that the two phrases are interchangeable. The definition of civil conspiracy employs the phrase "acting in concert," while the definition of concerted action lists conspiracy as a synonym. *See*, BLACK'S LAW DICTIONARY, 5TH Ed., at 223, 262. The Restatement (Second) Torts outlines three distinct forms of vicarious liability for acting in concert with another as follows:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) TORTS, § 876. The comments to subsection (a) cite the early common law theory that where two or more persons each commit tortious acts in concert with the other, a mutual agency exists; however,

for this theory to apply, it is essential that each actor's conduct be in itself tortious. *Id.,* Comments a, c. When a tortious act is done pursuant to a common design, the theory is civil conspiracy. *Id.,* Comment (b).

Justice Larsen's complaint clearly alleges concerted action as well as mutual agency. Consistently, Justice Larsen has argued that he has alleged a case of mutual agency and is not necessarily required to establish a civil conspiracy. Thus, the two causes of action will be considered under both theories.

A final note as to the civil conspiracy theory is required. Pennsylvania law is clear that to establish a civil conspiracy, there must be proof that two or more persons agreed to perform an unlawful act, or to perform an otherwise lawful act by unlawful means. *Slaybaugh v. Newman,* 330 Pa.Super. 216, 219–221, 479 A.2d 517, 519 (1984). Each conspirator must be possessed of the intent to do the unlawful act and be aware of such intent by his purported co-conspirators. *Fife v. Great Atlantic & Pacific Tea Co.,* 356 Pa. 265, 266, 52 A.2d 24, 27 (1947). Conspiracy must be proven by full, clear, and convincing evidence; if the plaintiff relies upon subsequent acts to establish conspiracy, those acts must indicate prior collusion and unlawful purpose. *Burkholder v. Westmoreland County Institutional District,* 362 Pa. 645, 649, 68 A.2d 436, 438 (1949).[1] The sufficiency of the evidence to establish a civil conspiracy is first to be determined by the court. *Fife,* 356 Pa. at 266, 52 A.2d at 27. Where a plaintiff fails to establish an issue of material fact as to the necessary elements of a civil conspiracy,

1. Justice Larsen argues that the trial court erroneously applied the law of criminal conspiracy to this case. *See,* appellant's brief at 14–15. It is true that the trial court cited *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984), for the proposition that mere presence at the scene of the crime is insufficient to establish a criminal conspiracy. (Trial court opinion at 11.) Nonetheless, the trial court carefully analyzed the applicable principles of law relative to civil conspiracy; furthermore, the full, clear and satisfactory evidentiary standard which Justice Larsen complains of is clearly applicable to civil conspiracy cases. *See, Fife, supra,* 356 Pa. at 266, 52 A.2d at 27. Thus, the argument has no merit.

summary judgment may be properly entered.  *Thompson Coal*, 488 Pa. at 212, 412 A.2d at 473.

Reading the record to favor Justice Larsen, the following facts were presented to the trial court.  Surrick was a member of the JIRB.  Surrick and Biddle were present in the prothonotary's office when the "XYZ" petition relating to the JIRB investigation of Justice Larsen was filed.  Subsequent to the disposition of the "XYZ" petition, Biddle and his employer, the PN defendants, published articles regarding the petition which are alleged to have defamed Justice Larsen.  From these facts, Justice Larsen argues that a jury could infer that Surrick acted in concert with the PN/PG defendants to defame him via the articles or that Surrick and PN/PG defendants were mutual agents liable for the acts of each other.  I disagree.

As to the civil conspiracy theory, Justice Larsen relies heavily upon *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), in arguing that the presence of Surrick with Biddle in the prothonotary's office is sufficient to create a material factual issue as to the existence of a civil conspiracy.  *Adickes* is distinguishable.[2]  The United States Supreme Court stated:  "[i]f a policeman were present [in the Kress & Co. store with the employees who refused the petitioner service], we think it would be open to a jury, in light of the sequence that followed, to infer from the circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an under-

2.  The trial court distinguished *Adickes* by recognizing that the reversal of summary judgment which occurred in that case was based upon the failure of the defendant to introduce affidavits which refuted the inference creating the factual issue.  (Trial court opinion at 12.)  As affidavits were present here, the *Adickes* holding does not apply.  Further, the summary judgment procedure used in the federal courts is not precisely the same as that employed in the courts of our Commonwealth.  Under Pennsylvania law, consideration of any affidavit offered by Surrick's witnesses would be improper.  It is true that the Eiseman affidavit indicates that Surrick and Biddle were not present when the "XYZ" petition was filed.  Were we to give credence to this affidavit, we would not only violate the *Nanty–Glo* rule by determining it to be more credible than the Tassos affidavit, but we would read the record to favor the moving rather than non-moving party.  This we will not do.

standing that petitioner should be refused service." *Id.*, 398 U.S. at 158, 90 S.Ct. at 1609. Additional circumstances beyond the possibility that a police officer was in the store were also present in the *Adickes* case. The manager of the store admitted that he had a prearranged tacit signal with the food counter supervisor to ensure that the plaintiff would be refused service. *Id.* at 153–154, 90 S.Ct. at 1606–1607. Thus, the unlawful intent on the part of those sought to be charged with liability was already established by an admission. Further, the unlawful acts, refusal of service and groundless arrest for vagrancy, occurred immediately after this possible agreement. *Id.* at 149, 90 S.Ct. at 1604.

By comparison, the inference which Justice Larsen urges here is much more attenuated. There is no admission by Surrick or the PN/PG defendants of unlawful intent. The allegedly defamatory articles were not published until after the "XYZ" petition had been ruled upon by our Supreme Court. It is not reasonable to infer from the presence of Surrick in the prothonotary's office with Biddle [3] that Surrick intended at that time to defame Justice Larsen.

As noted above, proof of conspiracy by subsequent acts must show prior collusion and unlawful intent. Justice Larsen has presented no evidence of any meeting between Surrick and the PN/PG defendants following the disposition of the petition. Prior to that disposition, Surrick could not have known that Justice Larsen would participate in hearing the request. Thus, to support the claim made here, we must infer that the "XYZ" petition was filed with the intent and knowledge that Justice Larsen would participate in ruling on it so that the defamatory articles could be published. Unlike *Adickes*, here we are not presented with a meeting between purported co-conspirators, one of whom has admitted his unlawful purpose, immediately followed by the commission of unlawful acts. Thus, *Adickes*, while

---

**3.** We do not decide that this in fact occurred. We only accept Justice Larsen's representations of the facts, as it is our obligation to read the record in his favor.

somewhat supportive of Justice Larsen's position, is not truly on point.

In Pennsylvania, the evidence to establish a civil conspiracy must be full, clear and satisfactory. *Fife*, 356 Pa. at 267–269, 52 A.2d at 39. Evidence which merely creates the suspicion of concerted action is insufficient. *Id.* at 266, 52 A.2d at 27. We recognize that at this point in the proceedings all Justice Larsen must do is raise a factual issue that sufficient proof exists, as this is all that is necessary to survive a motion for summary judgment. Nevertheless, all that has been shown is the possible existence of Surrick's presence in the prothonotary's office with Biddle before either could be aware that Justice Larsen would participate in the decision on the "XYZ" petition and thus provide the basis for the allegedly defamatory articles. Allegations of conspiracy are easily made; absent proof of facts to substantiate the illicit agreement, summary judgment may properly be entered. *Thompson Coal*, 488 Pa. at 212, 412 A.2d at 473.

The mutual agency theory likewise cannot survive the motion for summary judgment. The only act Surrick is alleged to have performed is the filing of the petition while accompanied by Biddle. The filing of the "XYZ" petition is not a tortious act in and of itself, neither is being accompanied by an alleged tortfeasor. As discussed above, a tortious act by each actor is the *sine qua non* of the mutual agency theory, its absence is fatal.

Nor can Justice Larsen rely upon § 876(b) or (c) to salvage the defamation cause of action. As noted above, Surrick's alleged accompaniment of Biddle occurred before it was possible to know that Justice Larsen would participate in deciding the "XYZ" petition and, thus, before the event which gave rise to the allegedly defamatory articles occurred. Therefore, Surrick's activities cannot be construed as substantial assistance or encouragement to the PN/PG defendants, given with the knowledge that the PN/PG defendants' would engage in conduct constituting a breach of duty. Thus, no liability attaches under § 876(b).

Neither Surrick's accompaniment of Biddle nor the filing of the "XYZ" petition constitute a breach of any duty to Justice Larsen. Therefore, liability does not lie under § 876(c).

Justice Larsen emphasizes the fact that the trial court relied upon the answers to interrogatories of the PN/PG defendants averring that Surrick never participated in the editorial decision-making process. Thus, Justice Larsen claims that the *Nanty–Glo* rule, as stated in *Peluso* and *Garcia*, has been violated. This may be so. Nonetheless, we have found fatal deficiencies in all theories supporting the defamation cause of action based upon the allegations of the complaint and the Tassos affidavit submitted by Justice Larsen. Thus, I agree that the grant of summary judgment is correct as to the defamation count of the complaint. *See, Gwinn v. Kane,* 465 Pa. 269, 279 n. 12, 348 A.2d 900, 905 n. 12 (1975) (reviewing court may affirm a correct ruling based upon an alternate legal theory from that employed by the trial court).

Summary judgment as to the invasion of privacy (false light) cause of action presents a different question.[4] Surrick argues that this count also involves a claim that he acted in concert with the PN/PG defendants. He further argues that since the trial court found this allegation defective on the defamation count, our affirmation of that decision would dictate that the invasion of privacy (false light) count must likewise fail. I disagree.

Count V of the complaint, which contains the invasion of privacy (false light) cause of action, does not explicitly allege that Surrick converted the JIRB transcript and delivered it to the PN/PG defendants. The conversion and delivery transcript is contained in Count IV which is not

---

4. In a previous opinion arising out of the case *sub judice,* this Court held that a cause of action for false light invasion of privacy could be maintained on the pleadings contained in the complaint. *Larsen v. Philadelphia Newspapers, Inc.,* 375 Pa.Super. 66, 80–86, 543 A.2d 1181, 1188–1190 (*en banc*) *alloc. denied,* 520 Pa. 597, 552 A.2d 251, 252, *and in* 520 Pa. 606, 553 A.2d 968 (1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989). [Hereinafter, *Larsen I.*]

incorporated by reference into Count V.[5] Count V does allege that Surrick possessed a copy of the transcript while not acting in his official capacity as a JIRB member and while acting in concert with, or as a mutual agent of, the PN/PG defendants. *See,* Fourth Amended Complaint, Paras. 128 (incorporating Para. 12), 137. It also alleges that the PN/PG defendants possess a copy of the transcript. *Id.* Finally, the count alleges with particularity the JIRB confidentiality requirements set forth in the Pennsylvania Constitution, Judicial Code, and JIRB Rules. *Id.,* Paras. 131–133.

In examining whether Count V alleges sufficient, different facts to prove concerted action by, or mutual agency of, Surrick and the PN/PG defendants, it is noted that pleadings are to be liberally construed. *Vernon D. Cox Co., Inc. v. Giles,* 267 Pa.Super. 411, 414 n. 3, 406 A.2d 1107, 1109 n. 3 (1979). The pleadings of Count V may reasonably be construed to allege conversion of the transcript by Surrick and delivery of the same to the PN/PG defendants. Making this determination does not decide this case. Rather, plaintiff is merely advanced an *opportunity* to prove his case. Based on the pleadings, I would hold that Justice Larsen is entitled to his day in court. Should plaintiff not succeed on his day in court, the trial judge is fully capable of granting a compulsory non-suit or a directed verdict at the appropriate juncture.

Moreover, under the doctrine of law of the case, we would be precluded from examining the sufficiency of the allegations of Count V. The previous *en banc* decision of this Court in the case *sub judice* specifically approved the invasion of privacy (false light) cause of action *as pled. Larsen I,* 375 Pa.Super. at 84–86, 543 A.2d at 1190. Thus, this issue decided by an appellate court in a prior appeal

5. This allegation of concerted action by Surrick and Biddle in converting the JIRB transcript is also neither present in, nor incorporated by reference into, the allegations regarding defamation. *See,* fourth amended complaint, count III, pars. 31–62. Thus, it could not be used to support the defamation cause of action and was properly not considered by the trial court for that purpose.

between the same parties is the law of the case and shall not be re-examined on a second appeal. *Commonwealth v. Tick,* 431 Pa. 420, 425–427, 246 A.2d 424, 427 (1968); *Daniels v. State Farm Mutual Automobile Insurance Co.,* 305 Pa.Super. 352, 355–357, 451 A.2d 684, 686 (1982) (citations omitted). This Court, however, recognizes the complexity of the grant of summary judgment in this case. The adequacy of the pleadings of Count V should therefore be examined.

That Count V does not duplicate former Count IV is not fatal to plaintiff's case for false light. "While not a model of clarity, in our opinion, the complaint is sufficiently specific. From the complaint, each defendant knows the nature of the improprieties with which he is charged." *Local No. 163, International Union of Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America v. Watkins,* 417 Pa. 120, 125–126, 207 A.2d 776, 779 (1965) (examining complaint alleging tortious cause of action based on concerted action by co-defendants).

The pleadings of Count V include the allegation (at Para. 12, Fourth Amended Complaint) that defendant Surrick acted outside his official responsibility as a JIRB member, and in concert with the PN/PG defendants. The pleadings also contain the accurate factual assertion that JIRB proceedings are strictly confidential under the JIRB Procedural Rules (Para. 133); that JIRB never made public the record of plaintiff's proceedings (Para. 135); and that defendant newspapers have both published and publicly announced that they possess a complete copy of the JIRB transcript (Para. 136). Count V also contains allegations (Paras. 140–158) that the defendants, acting in concert, caused confidential information related to the proceedings and directly excerpted from the proceedings to be published in the Post–Gazette and Philadelphia Inquirer. In addition, Count V contains para. 195, under the heading "Accusation of Unethical Conduct", which states that "At all times relevant hereto the *Defendants, and each of them, have acted*

*individually, as agents of each other and in concert with one another."* (Emphasis added.)

In Plaintiff's Brief in Reply to Preliminary Objections of Robert Surrick, dated January 19, 1984, plaintiff states specifically that:

A. *All of the Defendants Published or Caused to be Published the Matters of Which Plaintiff Complains.* Plaintiff's Complaint alleges throughout that all of the Defendants have acted either individually or in concert with one another. (Specifically see Complaint paragraph 95). It is Plaintiff's position that all of the Defendants contributed in some way to the publication of each of the articles. While one person may be named as author, each of the other Defendants were involved in some capacity.

These statements by plaintiff show that plaintiff considered Surrick a part of the whole transaction which resulted in the publication of the JIRB transcripts. Plaintiff's position is supported by the pleadings.

The pleadings of Count V could be construed to include allegations that Surrick converted the JIRB transcript and delivered it to the PN/PG defendants. The allegations of Count V provide a basis to determine whether Surrick was acting in concert with, or as a mutual agent of, the PN/PG defendants different from the facts alleged to support concerted action and mutual agency in the defamation count. Granting summary judgment on the defamation cause of action, because it lacked a factual averment of concerted action, is not dispositive of the propriety of summary judgment as to the invasion of privacy (false light) claim.

I would hold that Count V could establish liability on Surrick under four possible theories of vicarious liability. First, under Restatement (Second) Torts § 876(a), Surrick's delivery of the transcript, if it occurred, could be construed as a conversion and, thus, tortious, in and of itself (*see,* RESTATEMENT (SECOND) TORTS §§ 228, 233, 242), giving rise to liability under the mutual agency theory. Second, the delivery of the transcript and the filing of the

"XYZ" petition, if construed together as an ongoing course of conduct, could establish a plan or common purpose to publicize the contents of the JIRB proceedings under a civil conspiracy theory.[6]

Third, the alleged act of converting the JIRB transcript and making it available to the PN/PG defendants[7] could also be construed as substantial assistance in accomplishing a tortious result. Clearly, without the transcript, the PN/PG defendants could not publish excerpts of it. Unlike Surrick's presence with Biddle in the prothonotary's office at the time of filing the "XYZ" petition, it is possible to conclude that the PN/PG defendants had knowledge that Surrick was breaching a duty at the time this alleged assistance occurred. Thus, liability may attach under Restatement (Second) Torts § 876(b), if it can be proven at trial that Surrick had knowledge of the PN/PG defendants' tortious motives.

Finally, the confidentiality of the JIRB transcripts is protected by the Pennsylvania Constitution, statute, and the JIRB rules of procedure. *See,* PA CONSTITUTION, ARTICLE V, SECTION 18(h); 42 Pa.C.S.A. § 3334; JIRB Rules of Procedure, Rule 20. The confidentiality mandated by these principles of law could be construed to run to the benefit of a party under investigation by the JIRB. Thus Surrick, as a member of the JIRB, could be held to have violated a duty to Justice Larsen, thereby rendering substantial assistance to the PN/PG defendants as discussed above, and giving rise to liability under Restatement (Second) Torts § 876(c).

The previous *en banc* decision of this Court in the case *sub judice* held that a private cause of action for breach of these confidentiality requirements would not lie against third parties who were not participants in the JIRB proceed-

6. The filing of the "XYZ" petition is alleged in Count V. *See,* Fourth Amended Complaint, Para. 176.

7. Again, we caution that we are not determining that this in fact occurred. We only read the record to favor Justice Larsen on this appeal.

ings. *Larsen I,* 375 Pa.Super. at 72–78, 543 A.2d at 1184–1186. This Court relied extensively upon *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978), in rendering that decision and was careful to note that it presumed that the appellees were third party/non-participants. *Larsen I,* 375 Pa.Super. at 74 n. 6, 543 A.2d at 1185 n. 6. In point of fact, the *Landmark* Court expressly stated that they were not faced with a challenge to the power of the state to punish a participant, such as JIRB member Surrick, for breach of confidentiality requirements. *Landmark,* 435 U.S. at 838 and n. 9 & 10, 98 S.Ct. at 1541 and n. 9 & 10. This is consistent with the recognized power of courts to impose gag rules on participants in criminal proceedings to protect the rights of the accused. *See, Sheppard v. Maxwell,* 384 U.S. 333, 361, 86 S.Ct. 1507, 1521, 16 L.Ed.2d 600 (1966); *Philadelphia Newspapers, Inc. v. Jerome,* 478 Pa. 484, 503, n. 20, 387 A.2d 425, 434, n. 20 (1980) (citation omitted). Thus, the prohibition of a private cause of action against third party/non-participants, announced in *Larsen I,* does not prohibit the imposition of liability upon Surrick, a JIRB participant, pursuant to the principles contained in Restatement (Second) Torts § 876(c). Imposition of liability, of course, is dependent upon sufficient proof at trial that Surrick in fact breached the confidentiality provisions at issue. This could create liability in Surrick based upon a breach of confidentiality, even where an action against the PN/PG defendants would not lie for an identical breach of confidentiality. The law, however, permits the imposition of liability on one tortfeasor where his co-tortfeasor has a privilege or immunity from liability. Restatement (Second) Torts, § 880. Furthermore, the varying theories supporting the invasion of privacy (false light) count are not precluded by the averment that Surrick did not participate in the editorial decisions on which portions of the transcript to publish. Surrick could be liable for the articles published by the PN/PG defendants if those articles cast Justice Larsen in a false light even though he did not participate in the editorial publishing decision.

To support his motion for summary judgment on Count V, Surrick offered his own affidavit and the PN/PG defendants' answers to interrogatories which averred that Surrick had neither converted the JIRB transcript, nor delivered it to the PN/PG defendants. The trial court correctly did not rely upon Surrick's affidavit, as this would have violated the *Nanty–Glo* rule. Rather, the trial court accepted the uncontradicted answers to interrogatories of the PN/PG defendants which averred that Surrick in no way participated in the editorial decision as to which portion of the JIRB transcript to publish, and granted summary judgment. (Trial court opinion at 16.)

The *Nanty–Glo* rule applies equally to the affidavits and depositions presented by the moving party's witnesses as well as those offered by the moving party himself. *Peluso v. Walter*, 334 Pa.Super. 609, 612–613, 483 A.2d 905, 907 (1984); *Garcia v. Savage*, 402 Pa.Super. 324, 586 A.2d 1375, 1379 (1991). The answers to interrogatories relied upon were submitted by Surrick's co-defendants in this case. While to some extent these parties might have interests adverse to Surrick, to a large extent all defendants in this case have convergent interests in contesting the claims of plaintiff. Thus, to rely upon the answers to interrogatories offered by his co-parties to grant the moving party's motion for summary judgment clearly violated the *Nanty–Glo* rule as stated in *Peluso*, because Surrick's co-defendants were his witnesses. Even though *Peluso* involved a case where the trial court considered depositions and testimonial affidavits in resolving a material issue of fact so as to grant summary judgment, there is sufficient support in Pennsylvania law to construe interrogatories as similarly testimonial in nature under *Nanty–Glo*. The Pennsylvania Rules of Civil Procedure provide that:

Interrogatories may relate to any matters which can be inquired into under Rules 4003.1 through 4003.5 [8] inclusive *and the answers may be used to the same extent as*

8. Rules 4003.1 through 4003.5 deal with the general scope of discovery.

*provided in Rule 4020* [9] *for the use of the deposition of a party.*

Pa.R.C.P. 4005(c), Written Interrogatories To a Party (emphasis added). At trial, depositions may introduced as evidence:

> At the trial, any part or all of a deposition, so far as admissible under the rule of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions....

Pa.R.C.P. 4020(a), Use of Depositions At Trial. We have never confronted this specific issue; however, the question of admissibility of written answers to interrogatories with reference to Pa.R.C.P. 4020 and general evidentiary principles has been addressed by another court. *Draper v. Vetter*, 38 Pa. D & C.3d 652 (1983). In *Draper*, the court held that the answers were admissible as evidence.

This Court has addressed the relationship between Pa. R.C.P. 4020 and deposition testimony. We have held that "the test of admissibility of a deposition under Rule 4020(a)(2) is the same as that for admissibility of like testimony offered by a witness on the stand in open court." *Jistarri v. Nappi*, 378 Pa.Super. 583, 594–596, 549 A.2d 210, 216 (1988) (citation omitted). When the provisions of Rule 4020 have been satisfied, there is no discretion in admitting deposition testimony. "The court must admit the deposition when it finds that the requirements of the rule have been met." *Kuntz v. Firth*, 216 Pa.Super. 155, 158, 264 A.2d 432, 433 (1970). *See also Williamson v. Philadelphia Transportation Company*, 244 Pa.Super. 492, 496–498, 368 A.2d 1292, 1295 (1976). Thus, because deposition testimony must be admitted when the requirements of Rule 4020 have been met, and Rule 4005 provides that answers to interrogatories may be used to the same extent, I would conclude that such answers are also testimonial in nature under *Nanty–Glo.* To have relied on defendants' answers to

9. Rule 4020 contains provisions on the use of depositions at trial.

interrogatories in the present case to grant summary judgment was error. Even if the PN/PG defendants are characterized as disinterested witnesses, their answers to interrogatories could not be used to support Surrick's summary judgment motion. *Garcia*, 402 Pa.Super. at 333–335, 586 A.2d at 1380. Even though uncontradicted, Justice Larsen is entitled to have a jury determine the credibility of the assertions of both the PN/PG defendants and Surrick.

Moreover, even accepting the answers to the interrogatories as true to the extent they claim that Surrick had no part in the editorial decision on publishing portions of the JIRB transcript, it does not follow that Surrick cannot be liable for false light invasion of privacy under Restatement (Second) Torts, § 652E. As noted above, the complaint alleges that Surrick acted in concert with, or as a mutual agent of, the PN/PG defendants by converting the JIRB transcript and making it available to them. The affidavit of Surrick and the PN/PG defendants' answers to interrogatories are insufficient to rebut this allegation under the *Nanty–Glo* rule. If Justice Larsen can prove this allegation, Surrick could be vicariously liable under the theories outlined in the Restatement (Second) Torts § 876, cited above, if the articles published by the PN/PG defendants did in fact cast Justice Larsen in a false light. Thus, the grant of summary judgment on the invasion of privacy count was improper and should be vacated.

I would affirm the order granting summary judgment as to Count III alleging defamation, and vacate the summary judgment on Count V alleging invasion of privacy.